## BEAN vs. LOFTUS.

*January 12 — February 3, 1880.*

EXECUTION: *(1) Officer claiming under, must show* valid *judgment. (3) Form of execution: when it runs in the name of the state.*
REVERSAL OF JUDGMENT. *(2) When error will not reverse.*

1. In an action against an officer who has seized chattels on an execution, by one who claims by previous purchase from the execution defendant, the officer must show the execution to be based on a *valid* judgment, before he can dispute the validity of the alleged purchase on the ground that it was fraudulent as against creditors.
2. Where the judgment record produced by such officer to sustain his defense shows that the court which rendered the execution judgment had never obtained jurisdiction of the defendant therein, a judgment against the officer must be affirmed here, although rendered on a different and erroneous ground, and although the bill of exceptions, made upon the appeal of such officer, does not bring up for review the exception taken to the admission of such evidence.
3. The execution, after the venue, began: "To the sheriff or any constable of said county, greeting:" but in the body thereof the command to levy was given "in the name of the state of Wisconsin." *Held*, sufficient in form.

APPEAL from the Circuit Court for *Crawford* County.

Replevin. Answer, that the defendant took the goods as constable, under an execution in favor of one C. L. Ingersoll against the property of one Harry M. Bean; that the goods belonged in fact to said execution defendant; and that the pretended bill of sale from him to the plaintiff, *John Bean*, was fraudulent and void as to creditors.

The evidence introduced by defendant is sufficiently stated in the opinion. The plaintiff had a verdict and judgment; and defendant appealed.

For the appellant, there was a brief by *M. M. & D. Webster* and *J. T. & Geo. Mills*, and oral argument by *J. T. Mills*.

For the respondent, there was a brief by *Thomas & Fuller*, and oral argument by *Mr. Thomas*.

COLE, J.    The underlying principle which controls this case, is clearly stated by DIXON, C. J., in *Bogert v. Phelps*, 14 Wis., 89–92, in nearly this language: "In case of an action against the officer by the party against whom process is issued, the process itself, being valid on its face, constitutes a complete justification.    But in case of suit by another person, claiming title to the property seized under the party against whom process issued, which title is contested on the ground of fraud, the officer must, in addition to showing that he acted under such process, show also that he acted for or on behalf of a creditor.    Where he acts under process of execution, this is done by producing the judgment on which it is issued.    If it be mesne process, then the debt must be proven by other competent evidence.    This proof, however, is required not because it affects the process, or is in that respect necessary to protect the officer, but because it affects the title to the property in question.    No one but a creditor can question the title of the fraudulent vendee; and hence the officer must show that the relation of debtor and creditor exists between the party against whom the attachment or execution ran and the person in whose behalf it was issued.    It is a necessary link in the chain of evidence by which the fraud is to be established."

Now, applying these remarks to the present case, it will be seen that it was essential for the defendant to show that he stood in the place of or represented a creditor of the fraudulent vendor; in other words, it was incumbent on him to prove a valid judgment upon which his execution issued, in order to establish his defense.    This was a necessary part of his case. In his answer, he states that he levied upon the property in controversy by virtue of an execution in favor of C. L. Ingersoll, and against one Harry M. Bean, who, he claimed, was the real owner of the property.    If he had shown a valid judgment in that action, then it is obvious he would have been in a position — representing as he would a creditor — to attack the sale from Harry M. Bean to the plaintiff as fraudulent and void.

But, until he established the fact that he represented a creditor of Harry M. Bean, he could not question the title of the fraudulent vendee.   The defendant did attempt to prove a valid judgment rendered by Justice McDill in favor of Ingersoll, and against H. M. Bean.   He offered in evidence, as a part of his case, certified copies of the original summons, return of service, and the docket entries of the justice in the cause.   This evidence clearly disproved the existence of a valid judgment. It showed that the justice never acquired jurisdiction of the person of the defendant in that action; and for that reason the judgment was void.   It was not claimed by the able and ingenious counsel who argued the cause here for the defendant, that there was any legal service of summons on Bean in the Ingersoll suit.   Indeed, the return of the officer plainly shows there was none.   But the counsel says that the plaintiff cannot avail himself of that objection on this appeal, because he has not himself made out a bill of exceptions.   But it seems to us that the plaintiff may insist here that the defendant, on the trial below, proved himself out of court by showing that the execution under which he justified the taking of the property afforded no protection, since it affirmatively appeared that the judgment on which it was issued was void.

It is true that H. M. Bean, who was a witness for the plaintiff on the trial, testified, on cross examination, that he confessed the Ingersoll judgment.   But it would be an unwarranted inference, in the face of the docket entries, to conclude that the witness meant by this that he appeared before the justice and confessed judgment when it was rendered; for among the docket entries of the justice is this:   " Oct. 7th, 1876, 1 P. M. Cause called; plaintiff answers; no answer by defendant." This entry would certainly be untrue if the defendant actually appeared before the justice and confessed judgment.   What the witness probably intended to say, was, that he did not contest, or that he admitted, the justice of the Ingersoll judgment; not that he appeared in court and confessed it.

The case of *Grace v. Mitchell et al.*, 31 Wis., 533, was much relied on by counsel for the defendant, in support of the proposition that process fair on its face is a protection to the officer, even when it is issued by a court or officer of restricted or limited jurisdiction. In certain cases such process doubtless will afford complete protection to the officer. This is the doctrine of the early case of *Sprague v. Birchard*, 1 Wis., 458. In *Grace v. Mitchell* the action was by the garnishee against the officer and judgment creditor. There the officer doubtless would have been protected by his execution, which was valid on its face, had he not received notice *aliunde* that the judgment upon which it was issued was void for want of jurisdiction. But that case is quite dissimilar to this, where it was necessary for the defendant, under his answer, to show that the relation of debtor and creditor existed between H. M. Bean and C. L. Ingersoll in order to be in a position to avoid the sale from Bean to the plaintiff. And, as we have said, he attempted to show this relation by proof of a judgment between these parties, which he himself impeached. There was no such question in the Grace case.

The court below excluded the execution under which the defendant justified, because it did not run in the name of the state of Wisconsin. We do not think that objection to the writ well taken. Inasmuch as it appeared that the execution issued upon a void judgment, there was no error in excluding it, under the circumstances. Had the defendant shown a valid judgment, it should then have been admitted.

*By the Court.* — The judgment of the circuit court is affirmed.