TOWNSLY-MYRICK DRY GOODS CO. *v.* FULLER.

Opinion delivered November 25, 1893.

*Sheriff—Justification under process.*

> Where a sheriff attempts to justify a seizure of goods in the hands of a mortgagee under execution against the mortgagor by proving that the mortgage is fraudulent, the mortgagee may prove that the judgment, which was rendered in a justice's court, while regular on its face, was void for want of jurisdiction of the mortgagor.

Appeal from Scott Circuit Court.

EDGAR E. BRYANT, Judge.

*Sandels & Hill* for appellant.

1. The parol testimony was admissible and proper to show that the justice's judgment was void. 46 Ark. 153 ; 43 *id.* 232 ; 52 *id.* 373 ; 22 Pac. Rep. 505.

2. The rule is that an officer is protected by process in his hands, if regular on its face, when he confines himself to a levy on property in possession of the defendant in execution. Where he levies on property in possession of third persons, he is not protected by a *prima facie* valid judgment and execution ; it must be in fact valid and legal. Freeman, Ex. sec. 101; 19 Mo. App. 587; 6 Hill (N. Y.), 311; 2 Pick. 411 ; 5 Hill, 194; 7 Ill. App. 635; 4 N. W. Rep. 334; Drake on Att. sec. 185*a*, and notes ; 8 Ark. 406.

3. A response to a motion for a new trial is not allowable under the code system, as a plea *puis darrein*

*continuance.* 33 Ark. 801 ; 2 Herman on Est. 1425 ; 12 N. W. Rep. 858. See 7 Ark. 502.

4. The proceeds of an illegal sale go in mitigation of damages, and not in bar thereof. See 29 Ark. 448 ; 45 *id.* 112 ; 55 *id.* 329 ; 3 Dana (Ky.), 494 ; 12 Conn. 473 ; 20 Conn. 206 ; 26 *id.* 484 ; 7 Ohio St. 299 ; 47 Pa. St. 118 ; 14 Pick. 356 ; 40 Wis. 612; 45 N. H. 339 ; 28 Ill. 135; 3 Suth. Dam. 482; 16 Wend. 608.

*Daniel Hon* for appellee.

1. The execution was regular on its face, and was a protection to the officer in levying on any property of the *defendant.* Freeman, Ex. sec. 102. The jury found that the property was Wilson's. See Herman on Ex. 215, 218.

2. Appellee was entitled to plead as a defense to the motion for a new trial the facts stated. Mansf. Dig. sec. 5033; Myers, Ky. Code, 378 and cases cited.

3. Where a party elects to sue for the proceeds of an illegal sale, and especially where he receives and receipts for them, he waives the trespass. See 125 Ind. 381 ; 113 N. Y. 450; 22 Oh. L. J. 338 ; 8 L. R. A. 216 ; 52 Ark. 458 ; 93 Mo. 331 ; 17 Barn & Cr. 310 ; 149 Mass. 141 ; 1 W. & S. 108 ; 63 Mo. 19, 22.

4. The judgment is right on the whole case.

*Jos. M. Hill* for appellant on motion for rehearing.

5 Wend. 170 (S. C. 21 Am. Dec. 181) holds that a ministerial officer may justify under process, whether of a superior or inferior court, of general or limited jurisdiction, where the process is fair on its face, and contains no notice of a want of jurisdiction of the person. But it does not hold that an officer is protected by such process when he levies on property not in possession of the defendant in execution. Nor does any case cited in notes to 21 Am. Dec. *supra* hold that the officer is protected by fair process when he exceeds the

authority of that process, and levies on property in possession of some one other than that named therein ; but, on the contrary, on p. 208, the exception is expressly recognized, and numerous cases cited. See also 41 Ark. 285 ; 15 Ark. 283 ; 8 *id.* 406 ; Freeman, Ex. sec. 102.

BATTLE, J. This was an action instituted by the Townsly-Myrick Dry ·Goods Company against L. P. Fuller to recover damages. The claim was based on the following facts : On the 16th of March, 1891, D. A. Wilson, a merchant doing business at the town of Olio, in this State, being indebted to plaintiff, executed to it his promissory note for $2000, and at the same time executed, acknowledged and delivered a mortgage, whereby he conveyed to plaintiff certain goods, wares and merchandise to secure the payment of the note, and stated therein the conditions on which the mortgagee might thereafter take possession of them and sell the same for the purpose of paying the note. The mortgage was duly recorded. On the 15th of May, 1891, Wilson having committed a breach of the conditions, plaintiff took possession of the mortgaged property. On the 9th of May, 1891, Israel Brothers, a justice of the peace, issued an execution on a judgment which purported to be confessed before him, in his judicial capacity, by Wilson in favor of Barton Bros. for the sum of $90 ; and delivered the same to the defendant, who was then sheriff, and he executed the same in his official capacity, on the 30th of May, 1891, by forcibly taking from the possession of the plaintiff a part of the mortgaged property and selling the same at public outcry.

The facts which we have stated were proved at the trial. To justify his action the defendant introduced in evidence the judgment and execution under which he acted, both of which were subsequent to the mortgage; and attempted to show that the mortgage was executed by Wilson to defraud his creditors. To show that the

seizure of the property was wrongful, the plaintiff offered to prove that the judgment was void by the following testimony of Wilson : ''Daniel Hon and Israel Brothers came to my store-house on the 29th of April, 1891, and Hon and I went into the store and had a talk about a claim for $90 that he had for collection against me in favor of Barton Bros. I told him I could not pay it, but it was a just debt. He said something about saving costs to me, and I said I wanted to save all I could. He said he had been to see Brothers that morning and Brothers had come to Olio with him to get his mail. Hon then went to the door, and called Brothers in. When he came in, Hon had some papers in his hand, and read over the amount of the Barton Bros. account, and asked me if it was all right. I said it was, and a just claim. I do not remember of Brothers saying anything about it at the time. We were standing by, or leaning on, the counter in the storehouse. Five or six people were around there, but none noticing our conversation. Any of them could have been reached by raising the voice. No court was cried, no officer in attendance— nothing was said about a court. I did not know I was confessing judgment, and did not know a court was in session. I did not offer to confess judgment, and did not know one was rendered till the 9th of May, when execution was issued. Don't know whether I would have confessed judgment had I known Mr. Hon desired it or not. Hon called for pen and ink, and I got it, and went to another part of the store to wait on a customer, and nothing more was said on the subject. No summons was ever served on me in the case referred to, and I never confessed judgment in the case, unless the facts above stated constituted the same." And the court refused to allow it to introduce the testimony, and plaintiff excepted. Other testimony to the same effect was offered by the plaintiff, and excluded by the court.

The jury returned a verdict, and the court rendered judgment thereon, in favor of the defendant; and plaintiff moved for a new trial, on the ground, among others, that the court erred in excluding testimony as before · stated. To this motion the defendant filed a response, setting up the facts which were not shown in the trial, such as he claimed would estop the plaintiff from prosecuting his action. The court sustained the response, and denied the motion; and plaintiff appealed.

" Appellant's motion for a new trial does not set up any of the grounds mentioned in the 2nd, 3rd, and 7th subdivisions of section 5151 of Mansfield's Digest, and therefore no issue of fact could be made upon it." The response thereto should have been wholly disregarded, or, on motion, should have been stricken from the files of the court.

The exclusion of the testimony offered by appellant presents the only question necessary for us to consider. The underlying principle which controls its admissibility is clearly and forcibly stated by Chief Justice Dixon in *Bogert* v. *Phelps*, 14 Wis. 89–92, in nearly this language : " In case of an action against the officer by the party against whom process issued, the process itself, being valid on its face, constitutes a complete justification. But in case of suit by another person claiming title to the property seized, under the party against whom process issued, which title is contested on the ground of fraud, the officer must, in addition to showing that he acted under such process, show also that he acted for or on behalf of a creditor. Where he acts under process of execution, this is done by producing the judgment on which it is issued. If it be mesne process, then the debt must be proved by other competent evidence. This proof, however, is required, not because it affects the process, or is in that respect necessary to protect the officer, but because it affects the title to the property in

question. No one but a creditor can question the title of the fraudulent vendee; and hence the officer must show that the relation of debtor and creditor exists between the party against whom the attachment or execution ran and the person in whose behalf it was issued. It is a necessary link in the chain of evidence by which the fraud is to be established." *Bean* v. *Loftus*, 48 Wis. 371; *Damon* v. *Bryant*, 2 Pick. 411; *Ames* v. *Sturtevant*, 2 Allen, 583; *Suydam* v. *Keys*, 13 Johns. 445; *Earl* v. *Camp*, 16 Wend. 562; *Hines* v. *Chambers*, 29 Minn. 7; *Cross* v. *Phelps*, 16 Barb. 502; *Horton* v. *Hendershot*, 1 Hill, 118; *Maley* v. *Barrett*, 2 Sneed, 501; *Dunlap* v. *Hunting*, 2 Denio, 643; S. C. 43 Am. Dec. 763; *Sheldon* v. *Van Buskirk*, 2 N. Y. 473; *Sexey* v. *Adkinson*, 34 Cal. 346; S. C. 91 Am. Dec. 698 and note; Cooley on Torts, sec. 463; 1 Freeman on Executions (2d ed.), sec. 101.

In this case, the appellee, in his official capacity, levied upon the mortgaged property by virtue of an execution in favor of Barton Bros. and against Wilson, who he claimed was the owner of the property. He attacked the mortgage to appellant as fraudulent and void. As it was valid between the parties to the same, and, if fraudulent, was only void, under the statute of frauds, as to creditors and purchasers, it was necessary for him to prove that the execution, under which he acted, was issued on a *valid* judgment, in order to show that he had the right to attack the title of appellant by seizing the mortgaged property; for in that way only could he show that he was representing a creditor. A void judgment is not sufficient for that purpose. See cases above cited.

Says Mr. Freeman: "A void judgment is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally

worthless. It neither binds nor bars any one. All acts performed under it and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress. The first and most material inquiry in relation to a judgment or decree, then, is in reference to its validity. For if it be null, no action upon the part of the plaintiff, no action upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in the legislature or other department of the government, can invest it with any of the elements of power or vitality. It does not terminate or discontinue the action in which it is entered, nor merge the cause of action; and it therefore cannot prevent the plaintiff from proceeding to obtain a valid judgment upon the same cause, either in the action in which the void judgment was entered or in some other action." 1 Freeman on Judgments (4th ed.), sec. 117.

In all adversary suits "in which a defendant does not voluntarily appear, service of process upon him in some mode authorized by law is indispensable, and if it appears, even in a collateral proceeding, that any judgment has been rendered against one who has neither voluntarily appeared nor been served with process, it must be treated as void." *Boyd* v. *Roane*, 49 Ark. 397, 411; 1 Freeman on Judgments, sec. 120*a*.

A domestic judgment of a court of general jurisdiction, whether the record shows jurisdiction affirmatively or is silent upon the subject, is not subject to collateral attack based upon extrinsic evidence showing want of jurisdiction. It is said "that the question of the jurisdiction of a court of record over the parties to any domestic judgment must in all collateral proceedings be determined by the record; and that the answer to this question is not, except in some direct proceedings

instituted against the judgment, to be sought from any extraneous proof." *Boyd* v. *Roane,* 49 Ark. 397 ; 1 Freeman on Judgments, secs. 131–134. But this is not true as to the judgments of justices of the peace. They keep no unimpeachable memorial of their transactions. "Any statement in relation to jurisdiction found in their minutes is only *prima facie* evidence ; in opposition to which it may be shown, by any satisfactory means of proof, that the authority of the court did not extend over the matter in controversy, nor over the parties to the action." *Jones* v. *Terry,* 43 Ark. 230 ; *Smith* v. *Finley,* 52 Ark. 373 ; 2 Freeman on Judgments, sec. 517.

In *Jones* v. *Terry,* 43 Ark. 230, the plaintiff sued upon a judgment recovered by him upon a promissory note before a justice of the peace. The defendant answered and denied that the justice had ever acquired jurisdiction over his person. Upon demurrer to the answer this court said : "The defendant was not sued for the original debt. That was merged in the judgment, if there has been a valid one. And all matters which might have been litigated before the justice, save only the question of jurisdiction, are concluded by that judgment. * * * But it may be shown by extrinsic evidence, in the face of a recital in the judgment that the defendant was served with process or appeared to the action, that in fact he had no notice and that the judgment is therefore void for want of jurisdiction."

*Smith* v. *Finley,* 52 Ark. 373, was an action to recover the possession of a town-lot. The plaintiff claimed title by virtue of a purchase made by him at a sale under a deed of trust executed by the defendant to secure a debt, and a subsequent conveyance made in pursuance of the terms of the purchase. The defendant pleaded that the deed of trust was void for usury. The original transaction was shown by the evidence to be usurious. A judgment by confession rendered by a jus-

tice of the peace against the defendant for a debt secured by the deed of trust was introduced in evidence. The justice, who rendered the judgment, testified that he went with the plaintiff, who recovered the judgment, to the defendant's house, and she then, at the date of the judgment, and with the plaintiff's consent, confessed the judgment. On cross-examination, he stated that he went with the plaintiff to defendant's home, and she stated that she owed the note ; but that she did not come to his office to confess judgment, and he did not see her in his office. The defendant testified that the justice merely asked her if she owed the note, and she answered "Yes ;" that she did not understand that she was confessing judgment, and did not do so. The plaintiff in the action to recover the town-lot insisted that she was estopped by the judgment from setting up usury. This court held that the parol testimony was admissible to show want of jurisdiction, and was conclusive of that fact, and that the judgment of the justice was, therefore, void.

In this case the appellee, in his official capacity of sheriff, seized property which was held in possession and claimed by appellant under a mortgage. Appellant denied his right to do so. Appellee responded by saying that he seized it by virtue of an execution against the mortgagor, and that the mortgage was fraudulent and void. Appellant replied that if it was fraudulent, it was valid against every one except creditors and purchasers, and that appellee did not represent either of them. Upon this they joined issue. Appellee introduced the execution and judgment of the justice of the peace upon which it was issued, both of which were subsequent to the mortgage, as an evidence of his right to attack it for fraud, in the right of a creditor. Appellant offered to prove that the judgment, although regular upon its face, was invalid—void—for want of jurisdiction of the defendant against whom it was rendered, and,

therefore, did not prove the existence of any debt or right to seize the property, and the court refused to allow him to do so. The evidence was competent, and should have been admitted.

The judgment of the circuit court is, therefore, reversed, and the cause is remanded for a new trial.

Wood, J., did not participate in the decision of this cause.

Bunn, C. J., dissenting. This cause was heard and affirmed near the close of the last (November) term of this court, and comes up now on a motion for a new hearing, and the former judgment of affirmance is set aside by the majority of the court, (Justice Wood not participating), from which latter judgment, and the opinion upon which it is founded, I dissent for the reasons following :

Wilson was a merchant at Olio, a town in Scott county, and became indebted to the plaintiff and appellant to a certain amount as claimed, and, desiring to secure it, on March 16, 1891, executed and delivered to it a mortgage with power of sale, conveying to it his storehouse and stock of goods, which included the shoes in controversy. Said indebtedness was evidenced by three notes of $2000 each, aggregating $6000, but which, it is suggested, were mere cumulative amounts, the real indebtedness being $2000 only, as shown by the mortgage in controversy. Under the provisions of this mortgage, or deed of trust, appellant, through its attorney and agents, took possession of said stock of goods and storehouse (except the front room thereof) ; and the rear room, containing said goods, was placed in charge of their local agent, Tate, on the 16th May, 1891. The mortgage was recorded on the 16th May, 1891. The default on the part of Wilson, as mortgagor, which justified the taking

possession of the property by appellant, as mortgagee,
seems to have been a failure of Wilson to make monthly
statements of affairs to it, as stipulated ; Wilson himself
being named as the agent of mortgagees and put in pos-
session at first.

Wilson was also indebted to Barton Bros. in the
sum of ninety dollars, and the agent of the latter insti-
tuted proceedings before Israel Brothers, a justice of
the peace of the place, to put their claim into judgment,
on the 29th April, 1891, filing complaint and causing
summons to issue, but at this point the attorney and
agent of Barton Bros. and the justice of the peace went
over to the store of Wilson, and there, it seems, had a con-
versation with him about the indebtedness, which he said
was just, and they expressed themselves as wishing to
save Wilson unnecessary costs and expense, while he ex-
pressed a desire to the same effect. At this point the
testimony of the justice of the peace and the attorney
on the one hand, and Wilson on the other, differ, the one
claiming that Wilson confessed judgment and the other
that he did not—a controversy over which we have little
to do in this proceeding, as the whole of it is detailed in
a motion to have the same read in evidence for the pur-
pose of impeaching the judgment by confession therein
rendered on the same day, and which motion being over-
ruled presents the sole question of importance in this
case as will be seen as we proceed.

On the 30th May, 1891, an execution was issued
upon the confessed judgment, and placed in the hands of
one of the deputies of appellee, and on the same day
levied on the shoes in controversy, by forcibly breaking
into the rear room of Wilson's said store-house, where
they were as aforesaid, and taking them therefrom, and
in due time selling them at execution sale ; said rear
room having been securely barred by the said agent of

appellant when he was put in charge thereof on the 16th May aforesaid..

The appellant sued the appellee sheriff as a trespasser in taking said goods from its possession as the property of Wilson, to satisfy the judgment by confession in favor of Barton Bros., and laid its damages at three hundred and fifty dollars, and defendants put the mortgage of plaintiff in issue as being in fraud of the other creditors of Wilson. Judgment for defendant in circuit court, and plaintiff appealed; verdict of jury, in effect, that mortgage was fraudulent.

The sole question in the case, of any importance, is, did the circuit court err in excluding the testimony offered by plaintiff to impeach the judgment by confession in favor of Barton Bros. by matters *dehors* the record or minutes of the same? In other words, and to put it so it will perhaps be better understood: Under such circumstances, in order to place himself in an attitude to attack the plaintiff's mortgage, was the sheriff required to do more than exhibit the judgment in due form, upon which his process, also in form, was issued; or is he required, on issue made to that effect, to establish all the antecedent facts going to make the judgment valid? It is plainly to be seen that the question is one of title only, and not one of relative strength of claim, for the sheriff, should he fail to show his adversary's title invalid, must lose, whatever may be the character of the judgment under and by virtue of which he has proceeded. To put it more concisely, and as the books have it, the sheriff, as defendant in such a case, has only to show that he represents a creditor of the common debtor. The position then of the sheriff is, that his judgment, admittedly good on its face (which means that it contains all jurisdictional and other essential recitals), is the evidence of the fact that the relation of creditor and debtor in fact exists between Barton Bros. on the one

side and Wilson on the other. The position of the appellant is that the judgment is not *the* evidence, the conclusive evidence, of that fact in a proceeding like this. The majority of the court sustain the contention of appellant, and I, that of appellee, and in support of the position here assumed the following authorities are cited : *Sheldon* v. *Van Buskirk*, 2 Comstock (N.Y.), 473 ; *Bogert* v. *Phelps*, 14 Wis. 88 ; *Damon* v. *Bryant*, 2 Pick. 411 ; *Parker* v. *Walrod*, 16 Wend. 514 ; *Quincy* v. *Hall*, 1 Pick. 357 ; *Barr* v. *Boyles*, 96 Pa. St. 31.

To illustrate the extreme nicety of the point at issue, the foregoing authorities, and doubtless others, are or may be referred to as sustaining the other view. It will be seen on close inspection, however, that, in some of the decisions referred to in the opinion of the majority of the court, it is said that the sheriff must show a valid judgment. That introduces another inquiry—what is a valid judgment, as used in this connection? The court would hold that it is such a judgment as will hold good against all the assaults that may be made upon it by extraneous testimony, while it is maintained in this opinion that it can have no other meaning than that it is a judgment good on its face. The transcript of such a judgment is presented as documentary evidence of the defendant's standing in court—nothing more, nothing less. The court inspects it, and finds it *prima facie* evidence of the fact, and therefore admits it. The plaintiff proposes to attack the title *dehors* the record, but the plaintiff's title is called in question also. Will they be permitted to win on the weakness of their adversary's title, rather than by the strength of their own? Besides, let it be supposed that the invalidity of the judgment, after judicial inquiry permitted, is established. Does that destroy the relation of judgment-creditor and judgment-debtor existing between the parties to the judgment. They are no parties to this

proceeding, and are not to be affected by it in any manner. By such a course, the sheriff is denied the right to show by his judgment that he represents a creditor—in fact, it will be thus shown that no judgment-creditor really exists, and thus the holder of a mortgage, although almost confessed and shown to be fraudulent as to the other creditors of the common debtor, is allowed to win his case, and make way with the property which is the bone of contention. In the meantime an anomalous state of affairs is presented (for instance in this case) of Barton Bros., although adjudged to be no judgment-creditors of Wilson, still pursuing Wilson with the executions on their void judgment, as it is denominated by this court. Nor is it clear that Wilson himself can find any remedy for the evil which is still pursuing him. Thus in *Gerrish* v. *Seaton*, 73 Iowa, 15, which was a case wherein the defendant was endeavoring to get rid of a judgment rendered against him without notice, while quoting approvingly from the case of *Gerrish* v. *Hunt*, 66 Iowa, 682, the court say : "We there said that 'a judgment rendered without service of notice or other process required by law is void for want of jurisdiction in the court rendering it.' This familiar rule of law need not be supported by a citation of authorities. Such a judgment will be set aside and process enjoined thereon by chancery. *But this relief will not be granted if the party holding such void judgment has a valid claim whereon it was rendered, to which there is no defense.*" Is not the claim of Barton Bros. against Wilson confessedly a valid one? Is there any defense to it? The defendant himself swears that it is just. If the defendant himself cannot get rid of the judgment by direct proceeding, how can another do so in a mere collateral proceeding? After all is done, after the judgment has been impeached in the collateral proceeding, after the sheriff has been deprived of his weapon of offense,

his sword as it were, after he has been held to represent no creditor, that creditor in fact is still a creditor, and Wilson still his debtor.

We are reminded, at this stage of the argument, that the judgment of the justice of the peace, because there was no jurisdiction of the person of Wilson, is utterly null and void, notwithstanding it appears fair on its face. There is no question as to the jurisdiction of the subject-matter, and all jurisdictional facts, whether of the subject-matter or of the person appear, in the recitals. Such a judgment may be voidable, but void never. The very fact that it requires judicial ascertainment and judicial determination to show what will be done with it proves conclusively that it is only voidable. This being so, it not only requires proper proceedings to annul it, but it requires those proceedings to be at the instance of the proper parties and against the proper parties.

Mr. Black, in his work on Judgments, section 605, vol. 2, says : "One of the most important applications of the rule giving a qualified admissibility to a judgment as evidence against strangers is in the case where it is invoked as a proof of the relationship of debtor and creditor between the parties. It is now well settled upon high authority that where no fraud or collusion has been shown in the recovery of a judgment, such judgment is conclusive of the fact and the amount of the indebtedness of the judgment-debtor, and it cannot be collaterally impeached by third persons in a subsequent suit where such indebtedness is called in question. * * And a judgment obtained without fraud or collusion is conclusive evidence, in suits between creditors in relation to the property of the debtor, of the fact and amount of the indebtedness of the latter." This would be so in a contest between Barton Bros. and the appellants as to which might first subject the property to his claim. How much better is the position of

the sheriff, as representing the former, than that which they themselves occupy, for it is said everywhere, that a ministerial officer without notice of antecedent defects, as he is, occupies a more favorable position than would the person he represents, who is presumed to be acquainted with all the facts, including defects, if there be any.

In the case of *Candee* v. *Lord*, 2 N. Y. 269, also reported in 51 Am. Dec. 294, the judge delivering the opinion said: "In creating debts, or establishing the relation of debtor and creditor, the debtor is accountable to no one unless he acts *mala fide*. A judgment, therefore, obtained against the latter without collusion, is conclusive evidence of the relation of debtor and creditor against others: 1. Because it is conclusive between the parties to the record, who in the given case have the exclusive right to establish it; and, 2. Because the claims of other creditors upon the debtor's property are through him, and subject to all previous liens, preferences or conveyances made by him in good faith."

It follows, from the principles suggested, that a judgment obtained without fraud or collusion, and which concludes the debtor, whether rendered upon default, confession or contestation, is, upon all questions affecting the title to his property, conclusive evidence against his creditors to establish, first, the relation of creditor and debtor between the parties to the record, and, second, the amount of the indebtedness. In the present case the judgment is fair on its face, no fraud or collusion is charged or suggested as a matter of suspicion even, and the debt is a just one without question from any one, and withal the judgment stands unchallenged by Wilson, even upon the ground set up in this cause, by which it is now sought to be annulled.

It is unnecessary to do more than merely suggest the vast difference between a want of jurisdiction of

the subject-matter of litigation, and that of the persons of the parties to it. The defects in the latter may be, in many instances and in various ways, waived and acquiesced in, but the former is no where the subject of consent. One may be precluded notwithstanding there is defect of jurisdiction of the person, but never in the case of a want of jurisdiction of the subject-matter.

Finally, quoting from Freeman on Judgments, (section 529, vol. 2): "But the general rule seems now to be almost universally acknowledged and enforced, that an officer, acting under process, regular and valid on its face, and issued by a court which might lawfully exercise jurisdiction over the subject-matter of the action, is protected, although the court has no jurisdiction over the defendant, unless the officer had notice of the fact." This cannot refer exclusively to cases where property in possession of defendant in execution is taken, because it is too well settled that an execution good on its face is of itself and alone a protection, without having to refer to the judgment.

The point, as I have said, is an extremely nice one, we may say, in the last degree technical, but the view I take of it is the only one in which all the authorities can be reconciled.

The cases cited in the opinion of the majority as having been decided by this court, it is suggested, are scarcely applicable to this case, because neither of them is purely a contest of title to the property of the common debtor, because in those cases the defendants are the direct impeachers of the judgment, and because of other differences not necessary to mention.

I think, therefore, that the judgment in this cause should have been affirmed, as in the first instance.