Cite as 2021 Ark. App. 452

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV–20–442

|  |  |
|---|---|
| JAMES WILLIS SUTTON, JR.; HOMER WILLIS; AND LOUIS WILLIS, EACH IN HIS OWN RESPECTIVE INDIVIDUAL CAPACITY<br><br>APPELLANTS<br><br>V.<br><br>JERRY D. PICKETT AND JUDY K. PICKETT, MARRIED PERSONS<br><br>APPELLEES | OPINION DELIVERED NOVEMBER 17, 2021<br><br>APPEAL FROM THE SEVIER COUNTY CIRCUIT COURT [NO. 67CV-19-71]<br><br>HONORABLE CHARLES A. YEARGAN, JUDGE<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Appellants James Willis Sutton, Jr.; Homer Willis; and Louis Willis, each in their respective individual capacities and on behalf of the heirs, assigns, and successors of Nathaniel Neal and Emaline Neal ("Neal heirs"), appeal the March 16, 2020 order entered by the Sevier County Circuit Court in favor of appellees Jerry D. Pickett and Judy K. Pickett ("Picketts") and dismissing the Neal heirs' "Second Amended Complaint for Unlawful Detainer and Motion for Restraining Order." The Neal heirs argue that (1) the circuit court's holding that the 2010 order quieting title in certain individuals was void and rendered any attempted conveyance by the beneficiaries of that order void; (2) there exists no basis for providing the Picketts with a cotenancy interest for which neither they nor the

purported grantors bargained; and (3) the unlawful-detainer statute of limitations does not bar their action. We affirm.

I. *Facts and Procedural History*

Nathaniel and Emaline Neal held record title to certain property until a 2002 quitclaim deed from B.W. Willis[1] and an "Amended Quiet Title Decree" ("2010 Order") dated October 21, 2010, by the Sevier County Circuit Court, case No. CV-2009-126-1 ("Quiet Title Action"), confirmed title in Vaughn, Hamilton, Louis Willis, and Homer Willis as tenants in common (quiet-title beneficiaries referred to as "QTBs").[2]

A warranty deed dated February 28, 2011, describing an approximately eighty-acre plot of land that the QTBs obtained pursuant to the 2010 Order and listing them and their spouses as grantors and the Picketts as grantees was recorded in Sevier County on March 15, 2011 ("2011 Deed"). A subsequent warranty deed dated January 16, 2014, and reflecting a January 23, 2014 recordation date purported to grant approximately three acres of heirship property—specifically, certain hunting property in Sevier County—from the QTBs, who signed warranty deeds to the Picketts on that date ("2014 Deed"). The Picketts have possessed this property continuously since 2011.

On March 11, 2016, several previously unknown heirs of the Neals, along with the Neal heirs, filed an action to set aside the 2010 Order. Their petition alleged that the 2010

---

[1]Louis Willis, Homer Willis, and Gail Hamilton are heirs of the Neals. Although Dorothy Vaughn is not a blood relative of the Neals, on September 23, 2002, another Neal heir, B.W. Willis, a/k/a Henry B. Willis, executed a quitclaim deed for his interest in the relevant property to Vaughn and Hamilton.

[2]*See also generally Neal v. Vaughn*, 2018 Ark. App. 548, 565 S.W.3d 103 (providing factual background of the quiet-title action and challenges thereto).

Order was defective because (1) it granted relief that had not been requested; (2) the circuit court's exclusion of unnamed defendants/heirs was based on its adoption of allegations proffered by the named parties—specifically that all the defendants had been properly constructively summoned—but that none had appeared except Homer Willis and Louis Willis, and that all the unknown heirs were residents of Arkansas as stated in the warning order; (3) the finding that no other heirs had been before the court on August 20, 2010, was factually wrong because two of the unknown heirs had participated in formal discovery and pretrial preparations and had testified at the hearing; (4) the named parties failed to apprise the circuit court of the identity of those witnesses as being unknown heirs even when the circuit court ruled that the unknown heirs failed to appear; (5) the parties did not apprise the circuit court of this misunderstanding of fact after the hearing and before the entry of the amended decree; and (6) the circuit court mistakenly found that the unknown heirs had failed to appear as a result of the parties' misrepresentation and fraud upon the court. On the basis of these allegations, they asked that the 2010 Order be set aside due to fraud or misrepresentation under Rule 60(c)(4) of the Arkansas Rules of Civil Procedure. *See Neal*, 2018 Ark. App. 548, at 3–4, 565 S.W.3d at 105.

That request was eventually granted on June 25, 2019, through the entry of a "Stipulated Judgment and Order Setting Aside Amended Decree Quieting Title Dated October 19, 2010" ("2019 Order"). Homer Lewis and Louis Willis participated in this lawsuit pro se, while Vaughn, Hamilton, and the other petitioners were represented by

3

counsel.[3] The 2019 Order vacated and held void the 2010 Order on the basis that it was entered without proper service, and concluded that

> JUDGMENT IS THEREFORE ENTERED pursuant to the Stipulation of the parties, and the Amended Decree Quieting Title, entered in this Court on October 19, 2010, is hereby set aside, stricken, and held for naught, and any deed or other transaction based on the Amended Decree are without effect.

In August 2019, the Neal heirs provided a "Notice to Vacate Property" to the Picketts, but the Picketts did not vacate. Later that month, Sutton, Homer Willis, and Louis Willis filed a complaint seeking a writ of possession against the Picketts under the unlawful-detainer statutes. The relevant pleading in this appeal, the "Second Amended Complaint for Unlawful Detainer and Motion for Restraining Order," filed on November 23, 2019, sought injunctive relief including possession of the property and damages. Eventually, the parties filed competing motions for judgment on the pleadings.

The Neal heirs argued in their motion that pursuant to the 2019 Order, the 2010 award of title to the QTBs of the 2010 Order was void. Consequently, the 2011 Deed and the 2014 Deed, by which the QTBs purported to convey fee-simple titles to the Picketts, were also void. Moreover, they argued that to the extent the circuit court was considering a bona fide-purchaser argument, that theory could not prevail because (1) the voided 2010 Order prevented the application of principles regarding bona fide purchasers; and (2) the Picketts had notice of the defect in their title to the relevant property.

---

[3]The Picketts were not parties to the 2019 Order and had been dismissed from the action before the entry of the order. The Neal heirs appealed the Picketts' dismissal, but that appeal was dismissed (*Unknown Heirs of Neal v. Vaughn*, 2018 Ark. App. 348, 565 S.W.3d 103). The 2019 Order was entered thereafter.

4

The Picketts' response and countermotion for judgment on the pleadings argued that the language of the 2019 Order did not affect the 2011 and 2014 Deeds because that issue was not before the circuit court in that proceeding. Relatedly, despite having been parties to that suit for almost three years, the Picketts claimed lack of notice. They argued that, to the extent the 2019 Order reached the 2011 and 2014 deeds, the grantors of those deeds nonetheless conveyed their interests in the property, providing the Picketts with a "fallback" status as recipients of those grantors'[4] heirship interests, which they claimed rendered them tenants in common of the property. They abandoned any claim of bona fide-purchaser status and instead argued that they were entitled to possession because they came into the QTB's interests as tenants in common, rather than as fee-simple owners.

A hearing was held on February 12, 2020, during which the circuit court heard testimony from three of the parties: James Sutton, Louis Willis (one of the QTBs), and Judy Pickett. Sutton testified that (1) he was a Neal heir and had acquired the interests of multiple relatives; (2) the QTBs lacked the right or ability to convey full fee simple to the Picketts; (3) the Picketts had been parties to the 2016 action but had been dismissed from it shortly before the 2019 Order was entered; (4) the 2019 Order nullified the 2011 Deed and the 2014 Deed through voiding the 2010 Order; (5) there was indicia that fraud played some role in the creation or execution of the various deeds; (6) Sutton had attempted to go onto

---

[4]The Neal heirs note that one of the QTBs and subsequent purported grantors, Dorothy Vaughn, was not a Neal heir and therefore did not have an inherited cotenancy to convey. But because both the 2011 Deed and the 2014 Deed include at least one grantor whose heir status is not currently disputed, this issue is not relevant to this appeal. Also, regarding the 2002 quitclaim deed from B.W. Willis to Vaughn, no party relied on that document as granting anything more than a cotenancy interest, and Judy Pickett testified that she knew nothing of that deed.

the property since the entry of the 2010 Order but had been excluded from the property; (7) certain personal property belonging to the other Neal heirs or him had been removed from the property; (8) the 2010 Order was entered without notice to either him or the vast majority of the 1,500 to 2,000 Neal heirs; and (9) there exists a family agreement by which no member of the family will convey his or her interest to a non–Neal heir.

Louis Willis testified that (1) he expressly declined to convey only his interest as a cotenant; (2) the sale to the Picketts was intended to convey fee simple to all the property; and (3) he used the property for his cattle even after the sale to the Picketts.

Judy Pickett's testimony likewise indicated that she and her husband intended to buy all of the relevant property.

At the close of the hearing, the circuit court found in favor of the Picketts. The resulting three-page order dismissed the Neal heirs' "Second Amended Complaint for Unlawful Detainer and Motion for Restraining Order was filed on March 16, 2020," finding that the 2019 Order did not render the 2011 Deed and the 2014 Deed void because (1) the 2019 Order did not expressly mention those deeds to the Picketts; (2) the 2019 Order was "vague and ambiguous as to the plaintiffs' position that certain deeds were voided"; and (3) the Picketts "had nothing to do with the Stipulated Judgment." The circuit court also stated that the parties "appear to be tenants in common of the subject property." Finally, the circuit court found that the Picketts were entitled to possession to the relevant property under the unlawful-detainer statute of limitations set forth in Ark. Code Ann. § 18-61-104 (Repl. 2015) because they had been in peaceable possession of that property for at least three years preceding the filing. The Neal heirs filed a timely notice of appeal on April 13, 2020.

6

## II. *Standard of Review and Applicable Law*

Following a bench trial, an appellate court asks whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence and reviews questions of law de novo. *AgriFund, LLC v. Regions Bank*, 2020 Ark. 246, at 6, 602 S.W.3d 726, 730.

The relevant portions of the unlawful-detainer statute state:

> A person shall be guilty of an unlawful detainer within the meaning of this subchapter if the person shall, willfully and without right:
>
> (1) Hold over any land, tenement, or possession after the determination of the time for which it was demised or let to him or her, or the person under whom he or she claims;
>
> (2) Peaceably and lawfully obtain possession of any land, tenement, or possession and hold it willfully and unlawfully after demand made in writing for the delivery or surrender of possession of the land, tenement, or possession by the person having the right to possession or his or her agent or attorney[.]

Ark. Code Ann. § 18-60-304(1)–(2) (Repl. 2015).

## III. *Discussion*

The primary legal position of the Neal heirs is that a defense to their unlawful-detainer action required the Picketts to show they are in lawful possession of the relevant property and that they failed to do so. They make the following three arguments:

First, the Neal heirs argue that the effect of the 2019 Order renders any claim of fee-simple ownership in the Picketts ineffective. They maintain that the 2019 order voids the fee-simple ownership of the QTBs who subsequently purported to convey their ownership in the property to the Picketts. Under both general principles of law and the terms of the 2019 Order, the Neal heirs argue that these conveyances have been voided.

7

Second, the Neal heirs argue that the circuit court erred in adopting the Picketts' position that the 2011 Deed and the 2014 Deed, which they claim purport to grant full ownership in a fee-simple estate, can be converted into a grant of only those parties' cotenancy rights. They urge that this holding contravenes long-standing Arkansas law and the clear intent of all parties and constitutes a violation of the statute of frauds and improper reformation of the 2011 and 2014 deeds.

Finally, the Neal heirs maintain that the statute-of-limitations ruling is based on a misapplication of the relevant statute. They submit that to the extent that statute has any relevance, it is under the theory that the Neal heirs have an ownership or possessory interest to which the Picketts' interest is subject—i.e., it applies only if the Picketts are considered to occupy property of a landlord or other similar superior position. Under those circumstances, the statute-of-limitations period begins to run only when a demand to quit is made. The Neal heirs argue that even if an earlier date is used, the triggering event could be no earlier than such point at which they were in possession of a legal ruling recognizing their rights in the relevant property. By either measure, they argue that here, the statute-of-limitations period ran no longer than a few weeks. And because the Picketts did not meaningfully raise this provision until trial, it was not preserved.

The Neal heirs maintain that the proper resolution would have been a finding that the Picketts lack any legitimate possessory interest in the relevant property, and therefore, a grant of their complaint for unlawful detainer and the resulting relief requested by them.

A. Did the 2019 Order Render the 2011 Deed and the 2014 Deed Void?

The Neil heirs argue that that *any* post–2010 conveyances have been voided because of the 2019 Order. They submit that a judgment rendered without proper service is void, and any attempt to convey a purported interest that flows from title granted by a void order was granted nothing. Moreover, it is well established under Arkansas law that a lack of service renders an order void ab initio and not merely voidable. *See Rose v. Harbor E., Inc.*, 2013 Ark. 496, at 10, 430 S.W.3d 773, 779–80.

The effect of a void judgment must be to return the relevant parties to the position they were in before its entry because "[v]oid judgments have no legal effect. They are worthless; no rights can be obtained from them and all proceedings founded upon them are equally worthless." *Davis v. Office of Child Support Enf't*, 322 Ark. 352, 357, 908 S.W.2d 649, 652 (1995) (citing *Rankin v. Schofield*, 81 Ark. 440, 98 S.W. 674 (1906)); *see also Townsly-Myrick Dry Goods Co. v. Fuller*, 58 Ark. 181, 186–87, 24 S.W. 108, 110 (1893).

The Neal heirs cite several cases illustrating the effect of a voided quiet-title action on subsequent purchasers. *XTO Energy v. Thacker*, 2015 Ark. App. 203, at 11, 467 S.W.3d 161, 169; *Wright v. Viele*, 2013 Ark. App. 471, at 9, 429 S.W.3d 314, 319–20 (citing *Welch v. Burton*, 221 Ark. 173, 176, 252 S.W.2d 411, 414 (1952)).

The Neal heirs maintain that these cases demonstrate several points. First is that the upper time limit of when a quiet-title decree entered without proper service can be undone appears not to exist. Under Arkansas law, proper service of process to opposing and interested parties is an inviolable requirement for relief. Moreover, interests in land are among the most crucial in our society, especially in a state where agricultural interests and

9

outside leisure pursuits are so central. Accordingly, it makes sense that quiet-title actions entered without proper service are always vulnerable to being voided.

The Neal heirs argue that the now voided 2010 Order quieted nothing and granted no property interest to anyone. Accordingly, they assert that the QTBs never actually had anything set forth in that 2010 Order to convey. Because a party may not pass on something that the party lacks, any attempt to pass on an interest obtained by a void order fails. Accordingly, anyone claiming to hold title, whether the initial beneficiaries or those claiming a conveyance from them, in that chain simply does not. Because the beneficiary of a void quiet-title action does not have title, any attempts to convey title are ineffective.

The Neal heirs next argue that the 2019 Order, by its very terms, revoked the 2011 and 2014 conveyances. The operative disputed portion of the 2019 Order states the following:

> JUDGMENT IS THEREFORE ENTERED pursuant to the Stipulation of the parties, and the Amended Decree Quieting Title, entered in this Court on October 19, 2010, is hereby set aside, stricken, and held for naught, and any deed or other transaction based on the Amended Decree are without effect.

We disagree and hold that the circuit court correctly denied the Neal heirs' complaint for unlawful detainer because the Neal heirs failed to show that the Picketts were not entitled to possession. In this unlawful-detainer action, the circuit court was not called to determine ownership of the property at issue but rather only whether the Picketts, who were in possession of the relevant property, had a right to be in possession, which the circuit court found they did pursuant to the color of title conveyed to them by the 2011 and 2014 Deeds. *See* Ark. Code Ann. § 18-60-304. Although the Neal heirs pled an unlawful-detainer action

10

below, they actually attempt to present a quiet-title argument with respect to the property in their brief, which is not properly before us for review.

We have described unlawful detainer as "a limited remedy intended to give one claiming ownership of land a 'summary means' of ousting an individual, usually a tenant, in possession." *Henry v. Citibank, N.A.*, No. CA-07-1109, 2008 WL 1812965, at \*2 (Ark. App. Apr. 23, 2008) (unpublished) (citing *Webb v. Herpin*, 217 Ark. 826, 233 S.W.2d 385 (1950)). In an unlawful-detainer proceeding, the title to the premises is not adjudicated but is merely given in evidence to show the right of possession. *Id*. Furthermore, our supreme court has held, for this reason, "[J]udgment in unlawful detainer is not res judicata of the issue of title." *Webb*, 217 Ark. at 829, 233 S.W.2d at 387. Therefore, to the extent that the Neal heirs argue that the circuit court determined—and this court may determine via this appeal—that either they or the Picketts hold title to the relevant property, they are mistaken.

### B. Did the 2011 Deed and the 2014 Deed Convey Whatever Interest the Grantors Possessed as Heirs?

Relatedly, a theory advanced by the Neal heirs and contained in the circuit court's order is that even if the Picketts did not come into fee-simple ownership, they have a possessory right to the property as tenants in common. The Neal heirs maintain that this position is not supported by either Arkansas law or the facts of this case.

The Neal heirs submit that because the QTBs were stripped of the title purportedly conveyed by the 2010 Order, they were merely tenants in common attempting to convey a fee-simple estate in the 2011 Deed and the 2014 Deed. Accordingly, they conveyed no ownership or possessory interest in the relevant property. The Neal heirs argue that the

11

circuit court erred in transforming the interests set forth in those deeds in violation of the statute of frauds and the law governing reformation of deeds.

Both the 2011 Deed and the 2014 Deed meet the requirements for a deed of a fee-simple estate. The larger parcel was conveyed mere months after the entry of the 2010 Order. And the Picketts, as demonstrated both by statements of Judy Pickett and the amount of money they paid, clearly believed that they were buying a fee-simple estate. Additionally, testimony from both Neal heirs who testified, one of whom was a QTB and a purported grantor, established that there was no attempt made to convey anything other than the fee-simple title to the property, not an heir's cotenancy interest to a nonfamily member. The Neal heirs assert that there is no basis for holding that, despite the clear language of the relevant deeds and the express intent of the parties that the Picketts receive full ownership of the property, these deeds nonetheless conveyed only the QTBs' cotenancy interests.

Long-standing Arkansas law indicates that a cotenant who purports to convey a fee-simple estate to a third party conveys nothing except color of title. The Neal heirs contend that to convey a cotenant's actual undivided interest, the conveyance must expressly declare that intention. *See, e.g.*, *Parsons v. Sharpe*, 102 Ark. 611, 145 S.W. 537, 538 (1912) (discussing statute of frauds (*see* Ark. Code Ann. § 4-59-102 (Repl. 2011)).

They argue that the cotenant QTBs purported to grant a fee-simple estate that they did not possess, which resulted in the Picketts, as alleged grantees, receiving only a color of title that might eventually support a grant of title by adverse possession on the running of the statutory period. *See Welder v. Wiggs*, 31 Ark. App. 163, 167, 790 S.W.2d 913, 915 (1990); *Jackson v. Cole*, 146 Ark. 565, 226 S.W. 513 (1920) (recognizing that such a

conveyance grants color of title but not recognizing that it grants a tenancy in common). The Neal heirs urge that because the 2011 and 2014 Deeds purported to grant a fee-simple estate by mere cotenants, they granted neither ownership nor possessory interest in the Picketts and provide no defense to the unlawful-detainer action.

Accordingly, the Neal heirs assert that the circuit court's holding violates the statute of frauds and constitutes an improper reformation of the deeds in question. In granting the Picketts a cotenancy, the circuit court gave the 2011 and 2014 Deeds effects other than that which is contained on the face of those documents—in essence, improperly reforming them. *See Morton v. Park View Apartments*, 315 Ark. 400, 406–07, 868 S.W.2d 448, 451 (1993). *See* Ark. Code Ann. § 4-59-102(a), (b).

We disagree and note that the cases cited by the Neal heirs concerning the conveyance by cotenants to third parties do not stand for the proposition that a cotenant cannot convey his interest. Rather, the cases discuss the rights afforded a cotenant, which include the ability to eventually claim adverse possession to the entire interest. We also find that there is no merit to the Neal heirs' assertion that the circuit court violated the statute of frauds and improperly reformed the 2011 and 2014 Deeds to convey a cotenancy rather than fee simple. To reiterate, the Picketts established color of title to the property by virtue of the 2011 and 2014 Deeds, which they paid for. We decline to analyze whether the Neal heirs have a basis for an additional quiet-title action regarding the property and make no holding whatsoever regarding who holds proper title to the property in this appeal of an unlawful-detainer action. Having reviewed the record before us, we limit our opinion to

13

the affirmance of the circuit court's finding that the Picketts currently have the right to remain in possession of the relevant property.

## C. Does the "Peaceable and Uninterrupted" Statute-of-Limitations Provision Prohibit the Neal Heirs' Claims?

The final basis for the circuit court's dismissal of the Neal heirs' complaint is its finding that the unlawful-detainer action was untimely: "Ark. Code Ann. § 18-61-104 lends further credence to the court's grant of directed verdict. That is, the Picketts have been in peaceable possession of the property for, at least, three years." The Neal heirs claim that this finding is unsound for two reasons.

First, they claim that the limitations period did not begin to run until they issued the notice to quit the premises to the Picketts, and this occurred just weeks before the Neal heirs filed their unlawful-detainer complaint. When the theory of possession is that it flows from the rightful owners or possessors, the limitations period begins to run on the provision of a notice to quit. If, and only if, a tenant maintains peaceable possession for three years following a notice to vacate, does this provision allow him to maintain possession. *See Norman v. Randle*, 95 Ark. App. 292, 295, 236 S.W.3d 532, 534 (2006). Because the 2019 Order that triggered the action was entered in June 2019; the notice to quit was issued in July 2019 and presented to the Picketts in August 2019; and the unlawful-detainer lawsuit suit was filed in August 2019, the Neal heirs argue that the limitations period for an unlawful-detainer action had not elapsed.

Second, the Neal heirs argue that the Picketts' possession of the relevant property was neither peaceable nor uninterrupted. They maintain that the issues of title and possession of that property were being litigated between 2016 and 2019; thereafter, the 2019 Order

14

formally revoking the Picketts' claim of title was entered. They urge that the record reflects that between the entry of the 2010 Order and 2019, there were entries on, and use of, the relevant property by certain of the Neal heirs to make use of that property in a manner contrary to the Picketts' claim of ownership. Accordingly, the Neal heirs claim that any possession by the Picketts was neither peaceable nor uninterrupted.

The Neal heirs argue that the unlawful-detainer statute of limitations is inapplicable. This court's interpretation of that provision is that the clock begins to run upon a demand for possession, not when a tenant takes possession. *See Norman v. Randle*, 95 Ark. App. 292, 236 S.W.3d 532 (2006). As the *Norman* court recognized, this holding is in line with long-established precedent of the Arkansas Supreme Court:

> In *Carter* [*v. Reagan*], the appellant paid a sum of money to take possession of property belonging to appellee, with the understanding that appellee would resume possession when he and his wife returned from California. Appellant took possession in January 1855, and he remained in possession until appellee and his wife returned from California in October 1858. Appellee demanded possession, and appellant refused to vacate. Appellant contended that, because he had been in peaceable and uninterrupted possession for three years, appellee's action in unlawful detainer was barred by the statute of limitations. The court held that, until appellee demanded the property, appellant held it under him, and for him, and his possession not being adverse to their claim is not a possession under the statute of Forcible Entry and Detainer, on which he can have the benefit of a plea of peaceable and uninterrupted possession against the plaintiffs. The same is true in the case at bar.

*Id.* at 295, 236 S.W.3d at 534 (internal citation omitted). Accordingly, the Neal heirs claim to the extent that, as the Picketts state, the "plain meaning" militates in favor of holding that the limitations period had expired, it simply is not controlling.

We are mindful of the Neal heirs' argument on this issue, but we hold that it is not necessary to further analyze the parameters of section 18-61-104 and whether the related statute-of-limitations period had run in this particular case. is unnecessary. Because we have

15

addressed the merits of the Neal heirs' arguments and held that they should have brought a new quiet-title action rather than a lawsuit pursuant to the unlawful-detainer statute, we affirm the circuit court's order for the aforementioned reasons and do not address the merits of this particular issue.

Affirmed.

ABRAMSON and KLAPPENBACH, JJ., agree.

*The Law Office of Geoffrey D. Kearney, PLLC*, by: *Geoffrey D. Kearney*, for appellants.

*McMullan & Brown*, by: *Amy Clemmons Brown*, for appellees.