## JONES *v.* LITTLE ROCK BOYS' CLUB.

Opinion delivered January 12, 1931.

*Arthur J. Jones,* for appellant.

*D. D. Terry,* for appellee.

KIRBY, J. This appeal is prosecuted from a decree of the chancery court refusing injunctive relief against the construction and operation of the Boys' Club on the corner of Eighth and Scott streets in the city of Little Rock, and dismissing appellant's complaint for want of equity.

It appears from the testimony that appellant, the owner of a house and lot in the middle of the block opposite the site of the Little Rock Boys' Club at Eighth and Scott, brought suit to enjoin the erection of a new building on the said site, alleging that the erection thereof would constitute a nuisance and decrease the

value of appellant's property and that the continued use of the building and ground as a Boys' Club would also constitute a nuisance.

The site originally belonged to the Concordia Club, a social organization for Jewish people, and it has been used as a club for boys since 1925, when the Concordia Club was purchased with money raised from public subscription for use as a Boys' Club. The club building was destroyed by fire in December, 1929, and in June, 1930, the citizens of the city of Little Rock subscribed $140,000 for rebuilding and equipping the club.

The new building is to be erected on the site formerly occupied by the old building, and is to be of the same general size. The front will extend across the two lots on the corner, and the building will extend back about 95 feet on East 8th Street.

The property of appellant, a one-story cottage, is on the west side of Scott Street about the middle of the block located immediately in the rear of the First Presbyterian Church. The only other residence on that side on that block is a two-story house on the southeast corner of the block. The only other buildings on the half block with the club site are a filling station on the southwest corner of the block at 9th and Scott and an apartment house immediately behind the proposed club building fronting on East 8th Street. Across the street towards the city north on the same side of the street as the club building is the Second Baptist Church, an apartment house and the Albert Pike Hotel, while on the west side of the street between 7th Street and 8th Street is the Consistory.

There was much testimony introduced tending to show the membership of the club, the noise incident to its operation before its destruction by fire, plaintiff stating that the condition was intolerable, the boys comprising its membership being mostly those of the under-privileged classes, who were controlled only by one official, the club being in operation at all times of the day and until late in the night except on Sundays; that wrestling

matches, picture shows and prize fights were staged for the benefit and entertainment of the members of the club, with all the noises usually incident to and accompanying such entertainments.

The pastor of the Baptist Church testified that at times the noise made by the club members was so great as to disturb the religious services in his church on the opposite corner, but that usually the disturbance was eliminated and quiet restored upon a request sent over to the club.

Some witnesses testified that the value of the property as a residential district would be decreased in value because of the club, while other witnesses testified that the property was no longer a residential district, and would be enhanced in value because of the construction of the beautiful modern club building thereon.

It may be said that much testimony tended strongly to show that the club, as it has been operated, was not free from just criticism that it was disturbing to the residents of the immediate neighborhood and constituted on that account a nuisance, but there was also testimony to the contrary that the noises were not so great and con-. tinuous because of the operation of the club as would create an intolerable condition to any resident of the neighborhood entitling him to injunctive relief. No effort was made, however, to show that the club could not be properly operated in furtherance of the purpose of its establishment in such a manner as to fulfill its purpose without becoming a nuisance as to the residents in the vicinity.

The erection of the building itself could not constitute a nuisance under the circumstances of this case, and it is not insisted that it could be, but only that, as erected and operated as formerly, it would constitute such a nuisance. In any event, therefore, the erection of the building could not constitute a nuisance per se entitling appellant to an injunction prohibiting its construction. In Lonoke v. C. R. I. & P. Ry. Co., 92 Ark. 546, 123 S. W. 395, 135 Am. St. Rep. 200, this court said: "The act

done or the structure erected may be a nuisance *per se,* or the act or use of the property may become a nuisance by reason of the circumstances or location or surroundings. In the one case the thing becomes a nuisance as a matter of law; in the other it must be proved by evidence to be such under the law." This statement was again made in the case of *Swaim* v. *Morris,* 93 Ark. 362, 125 S. W. 432, 20 Ann. Cas. 930, where the court held a municipal ordinance declaring and prohibiting the erection of cotton gins as a nuisance *per se* was invalid and too broad, quoting the definition in Cyc. of a nuisance *per se*: "A nuisance at law or a nuisance *per se* is an act, occupation or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings." 29 Cyc. 1153. See also 46 C. J. 648, § 5. It was there said also (quoting syllabus): "Where an injunction is sought merely on the ground that a lawful erection will be put to a use that will constitute a nuisance, the court will ordinarily refuse to restrain the construction or completion of the erection, leaving the complainant free to assert his rights thereafter in an appropriate manner if the contemplated use results in a nuisance."

The district in which the club is located is certainly no longer an exclusively residential district, but is in a state of transition from residential to a business district, if it has not already ceased altogether to be a residential district, which the testimony shows it to have done in so far as the erection of any new residences therein. In *Fentress* v. *Sicard,* 181 Ark. 173, 25 S. W. (2d) 18, the court held the erection of a mortuary or undertaking establishment in the district which was in a state of transition from an exclusively residential district to a business district was not a nuisance which should be prevented or suppressed by injunction, where it would not by its location decrease the value of surrounding property or impair or destroy the health and comfort of the residents of the vicinity. In *Murphy* v. *Cupp, ante* p. 334, the court held that the erection of a tabernacle

for public worship, an annex to a church building already established, and the use to which it would be put would not cause any unusual annoyance or inconvenience to the residents of the neighborhood and denied injunctive relief against the erection of the building. It was there said: ''The rule is well settled that no injunction will be issued in advance of the construction of the structure unless it be certain that the same will constitute a nuisance.'' The following statement from Cyc. was also quoted there: ''Where the claim to relief is based upon the use which is to be made of a lawful erection, the court will ordinarily refuse to enjoin the construction or completion of the erection; and in such case the defendant, if he proceeds, does so at his peril and is liable to an injunction or an action of damages if such use results in a nuisance. If a building of itself will be a nuisance, its erection may, of course, be enjoined.'' 21 Cyc. 208.

Under the circumstances of this case and the principles of law as already announced in the decisions of this court, no such showing was made to entitle appellant to an injunction against the construction of the building for the use and operation of the Boys' Club on the ground of anticipating a nuisance therefrom, where it would not necessarily be a nuisance, but might become such under some circumstances.

The decree is accordingly affirmed.