PHILLIPS *v.* ADAMS.

5-1433                                          309 S. W. 2d 205

Opinion delivered January 27, 1958.

*Barrett, Wheatley, Smith & Deacon,* for appellant.

*H. L. Methvin* and *Edward S. Maddox,* for appellee.

SAM ROBINSON, Associate Justice. This action was filed by appellees seeking to restrain appellant from building a filling station on a town lot in Harrisburg, Arkansas, the contention being that the station would constitute a nuisance. The chancellor granted the petition, and Phillips, who wants to build the station, has appealed.

The Phillips property is Lot 5, Block 3, Vandiver Addition. The lot is in an area consisting of four square blocks which is all residential; no business establishment is located within the four blocks mentioned. State Highway No. 1 enters the town from the south and dead-ends at Jackson Street, which runs east and west. The lot in controversy is on the north side of Jackson Street and slightly to the east of the center of the intersection. It is not located on a corner, but is an inside lot. There is a filling station on the southwest corner of Highway No. 1 and Jackson, and there are other places of business within a few hundred feet to the south and to the east of the Phillips lot.

The chancellor made a clear finding of facts. We quote:

"There is no way that this court can absolutely prevent some hardship from falling upon somebody in-

volved in this litigation. Certainly, there can be no doubt that the people who have come here as petitioners who own property in the area involved are going to be subjected to some inconvenience and annoyance and other types of damage if this service station is completed and operated. On the other hand there certainly can be no doubt that Mr. Joe Phillips owns some property out there which is his to use generally as he pleases. Normally we start from the assumption that he has the right to use his property for any lawful business that he might wish to undertake so long as he does not encroach upon the lawful rights of other people who live around him.

"In trying to resolve that problem it seems to us we have to answer about two or three questions. First, is the specific area in which the new station is proposed to be operated an exclusive residential area? We find this is an easy question to answer. It is undisputed that in the area north of Jackson Street and west of Cole Street there has never been any commercial or business building or enterprise of any nature or kind since about 1920. We find, therefore, that the proposed station would be in what has heretofore for thirty years been an exclusively residential area.

"The second question is considerably more troublesome. Will this service station, if put into this residential area, necessarily be a nuisance which will damage the people who live in that area? It may be that different people operate service stations in a different manner. We believe this court will be confined in deciding this case very largely to the testimony of the people who are building this station and who told us what they intend to have and how they intend to operate. Mr. Matthews, representing the oil company which is financing this project and will supervise its operation, says that they plan to use all of the lights of whatever kind they may find necessary and desirable to attract trade. It is a matter of common knowledge that lights which are normally used in the operation of a service station vary from those lights which are low in the building and on the pumps, to those that stand very high

on poles around the edge of the area where the station is operated. Those lights, in the opinion of this court, cannot be confined to the area occupied by the service station, but of necessity will reflect particularly over the living area of Mr. and Mrs. David Adams, and those lights in some degree will constitute a nuisance which will render the livability of the Adams' home less desirable than it would be without those lights. Mr. Matthews testified that it would be the aim and purpose of his company to bring into that station as many motor vehicles that use petroleum products as they could possibly get. In the nature of things that would include the largest Diesel-powered trucks that they could get to stop. Mr. Matthews also testified that the greatest noise created by such a motor occurs when it moves from a dead stop. Therefore, those trucks would certainly create a vast outburst of noise after they pulled into the station and stopped and they got ready to move on. If they are of the size and type of many Diesel trucks moving upon our highways they will create such a noise and vibration that the home of Mr. and Mrs. David Adams might well nigh be untenable for some periods of time. This court will take judicial knowledge of the fact that a service station cannot be operated without fumes (from the gasoline and oils and other volatile substances that are used about it) being given off and permeating the atmosphere. Those fumes that are released, although the service station is operated in the most careful and prudent manner, become of such a nature as to make homes abutting upon or adjacent to the property occupied by a filling station far less desirable and valuable. Therefore, this court finds that the operation of this service station in the most desirable manner possible would create constantly recurring and irreparable damages to Mr. and Mrs. David Adams and to other people in the area.

"There is one other problem involved in this case. That is the equitable problem of Mr. Phillips and the people who are dealing with him possibly having to lose the money that they have already invested out there. The question must be answered as to who is mostly at

fault that this business has been allowed to progress as far as it has without somebody making an objection. Certainly it was the duty of these people who are objecting to make their objections known and file their suit at the earliest practicable moment. It was also the duty of Mr. Phillips, and of the officials of the Gulf Refining Company or the Gulf Oil Company, to exercise ordinary and reasonable diligence in trying to determine whether somebody might claim any damage or whether they might actually face this type of lawsuit. The evidence shows that the defendants exercised diligence to the point of consulting the City Attorney of Harrisburg, but they utterly failed and neglected to question one single, solitary property owner in the specific area involved to see whether some objection would be made and whether a suit of this kind might be forthcoming. The court finds it noteworthy that while the written documents between Mr. Phillips and the oil company were executed in November of 1956, they were not placed upon the public records, where the people in Harrisburg would know of their existence, until after this lawsuit was filed. We find, therefore, that Mr. Phillips and the people who are working with him did not exercise the diligence that would be expected of business men experienced in the ways of construction and necessity for clearing the rights to construct business enterprise in a residential section. The investment already made could, and should, have been delayed by defendants until their legal right to proceed had been determined.''

It is pretty well established that a filling station is not a nuisance *per se*. Whether a particular station, when put in operation, will be so situated as to constitute a nuisance is a question of fact. In *Huddleston* v. *Burnett*, 172 Ark. 216, 287 S. W. 1013, the chancellor made a finding that the proposed station would be a nuisance, and enjoined its construction. The decree was affirmed on appeal. In *Fort Smith* v. *Norris*, 178 Ark. 399, 10 S. W. 2d 861, the chancellor's decree holding that a service station would not constitute a nuisance was affirmed by this Court. Likewise, in *Clark* v. *Hunt*, 192 Ark. 865, 95 S. W. 2d 558, the chancellor's

decree holding that a service station would not constitute a nuisance was affirmed. The rule that the chancellor will be reversed on a finding of fact only when such finding is contrary to a preponderance of the evidence is so well known that citation of authority would be superfluous. Ark. Digest, "Appeal and Error", § 1009(4).

Here we cannot say the finding of the chancellor is not supported by a preponderance of the evidence. In arriving at the conclusion that the service station would constitute a nuisance, the chancellor considered largely the testimony of appellant's witness, Mr. Matthews, and from his testimony it appears that the service station would be a nuisance to the surrounding property owners.

Appellant also contends that it would be equitable to require appellees to reimburse appellant for money spent on the construction of the station up to the time the injunction was issued. But, as pointed out by the chancellor, equity is not on the side of the appellant in that respect.

Affirmed.