## ARKANSAS RELEASE GUIDANCE FOUNDATION
### v. R. J. NEEDLER, CHAIRMAN, "HALFWAY HOUSE OPPOSITION COMMITTEE"

5543                                              477 S.W. 2d 821

Opinion delivered March 20, 1972

*Jack Holt, Jr.,* for appellant.

*Roy Finch,* for appellee.

E. J. BALL Special Justice. This appeal involves the question of whether the lower court correctly found by a preponderance of the evidence and upon competent evidence, that the operation of a home for parolees and prisoners, known as a halfway house, apparently meaning a step between actual incarceration and full return to society, constituted a nuisance in fact of a private nature. The evidence established diminution in proterty values since the acquisition of the house by the appellant for the stated purpose plus apprehension and fear on the part of nearby residents for their safety because of the past criminal activity of the occupants of the halfway house.

While the appellant, in operating the New Life House, purported to exclude from residency there criminals whose crimes involved sex offenses, drug offenses or drug habituation and alcoholics, it appeared that during the course of the operation at least one of the residents of the halfway house had been convicted of carnal abuse, a sex offense, and another had been removed for activities relating to alcohol. The evidence further reflected that in operating the halfway house there was necessarily a technical violation of the rules of the Department of Corrections, State of Arkansas, in

that such rules for parolees prohibited their association with convicts. This, however, was not thought by the department to be serious inasmuch as the purpose of the operation was to rehabilitate and not as a nexus for criminal activity. Police and law enforcement personnel testified that when and where convicts congregate it tends to become a problem area for tor the police and law enforcement in general. Persons of like disposition are attracted and criminal activity originates.

Considering the record as a whole, we believe the finding of the Chancellor that the operation of New Life House constituted a private nuisance in fact, is consistant with the preponderance of the evidence, and his action in enjoining its operation was proper.

A nuisance is an interference with the use and enjoyment of land and includes conduct on property disturbing the peaceful, quiet and undisturbed use and enjoyment of nearby property. The law is clear that equity will enjoin conduct that culminates in a private nuisance in fact where the resultant injury to the nearby property and residents is certain, substantial and beyond speculation and conjecture. *Clark* v. *Hunt,* 192 Ark. 865, 95 S.W. 2d 558 (1936); *Cooper* v. *Whissen,* 95 Ark. 545, 130 S.W. 703 (1910). The distinction between a private and public nuisance is simply the extent of the injury, i. e., the number suffering the effects of the nuisance. *Fort Smith* v. *Western Hide and Fur Company,* 153 Ark. 99, 239 S.W. 724 (1922).

Here we cannot say the Chancellor was in error as to the law, or that his findings were against the preponderance of the evidence of the evidence, as to the existence of a private nuisance when the evidence supports the finding of diminution of property values in the area attributable to the operation of the New Life House, the real and reasonable fear and apprension for their safety by the nearby residents, coupled with the inclusion of a sex offender as a resident and incidents involving the use of alcohol by one parolee.

In *Nicholson* v. *Connecticut Halfway House*, 153 Conn. 507, 218 A. 2d (1958), strongly relied upon by the appellant, there were strikingly similar facts and the Connecticut court reached an opposite result. This case was instituted prior to operations, but the case was tried below upon a consideration of the operation of the property as a halfway house that had gone on for several months and after the filing of this action. Such was not the case in *Nicholson, supra*. Furthermore, in *Nicholson* there was only apprehension of decrease in property values and no evidence of any actual decrease in values of nearby property from the proposed use of the property. The *Nicholson* court did say that equity should not interfere with prospective operation and use of the property simply because of fears and apprehensions existing without substantial reason. Here the evidence supported the substantial reasons for the fear for safety of the residents and in property values. We think *Nicholspn, supra,* is completely distinguishable from the case presented here and therefore does not support appellant's argument. Furthermore, our case of *Howard* v. *Ethieson*, 228 Ark. 809, 310 S.W. 2d 473 (1958) enjoining the erection of a funeral home in a residential area because it decreased property values, was depressive and a constant reminder of death, restricted the play and activity of children, and had an adverse effect upon the comfort and health of its residents, seems to place our law in a different posture than *Nicholson, supra*. There we permitted the enjoining of a prospective private nuisance in fact which was certain to culminate. That, of course, is not the situation here because the court below had before it evidence relating to the operation of the halfway house reflecting significant decrease in property values in the mixed business and residential area and the fear and apprehension of the residents of the area because of the nature of the occupants of the halfway house. The findings of the Chancellor were not against the preponderance of the evidence and his findings should be sustained.

Affirmed.

Holt, J., not participating.