H. N. WARREN and Vera S. WARREN, individually
and d/b/a WARREN CONSTRUCTION COMPANY
*v.* Mike DETLEFSEN et al

83-231                                          663 S.W.2d 710

Supreme Court of Arkansas
Opinion delivered January 16, 1984
[Rehearing denied February 21, 1984.]

*Vickery & Jones, P.A.,* for appellants.

*Spencer, Spencer & Shepherd, P.A.,* for appellees.

DARREL HICKMAN, Justice. Mike Detlefsen and others filed suit to enjoin the construction of two duplexes in the Warren Subdivision 3 in El Dorado, Arkansas. This subdivision is one of three adjoining residential neighborhoods which were part of a development by the Warrens through their partnership, the Warren Construction Company. The chancellor held that the Warrens should be enjoined from building the duplexes based on the restrictive covenants contained in the deeds of the appellees and the representations made by the Warrens concerning the development of the three subdivisions. In finding that these were enforceable restrictive covenants for single family use, the chancellor relied on the language in the deeds that the property was to be used for residential purposes, and that "carport" was used singularly in the deeds. Those factors coupled with the oral representations of the Warrens led the chancellor to conclude the restrictive covenants were enforceable. We find no error under these facts.

The chancellor received into evidence deeds to the lots which the Warrens had sold in each of the three units. In Unit One, there are nine lots, with five of the deeds containing covenants restricting use to "residential purposes only" and requiring a minimum of fourteen hundred square feet. One deed recites similar language except it requires a minimum of twelve hundred square feet. One

deed states that the lot can be "used only for residential purposes" and requires a minimum cost of $30,000. Two deeds contain no covenants.

Unit Two consists of 21 lots with three of the deeds restricting use to "residential purposes only," "the dwelling," and require a minimum of fourteen hundred square feet. Four deeds are restricted to "residential purposes only," "the residence dwelling," and a minimum of fourteen hundred square feet. Four deeds contain this same language except the area is reduced to a minimum of twelve hundred square feet. Eight deeds in Unit Two contain no covenants.

In Unit Three, 20 lots had been sold at the time of trial. Of those, 11 deeds contain the restriction "for residential purposes only," "the residence dwelling," and require a minimum of twelve hundred square feet. One deed is restricted to "residential purposes only," "the residence," and requires a minimum of fourteen hundred square feet.

In promoting the development, the Warrens did not make a distinciton between the three units, selling the area as a single neighborhood. There are no visible boundaries or divisions between the units. The Warrens, through Warren Construction Company, are the grantors, the developers, and the builders of the subdivisions. The Warrens displayed a master plat of the entire development on the wall of their office for prospective purchasers to view. This master plat was not recorded.

The Warrens argue that the chancellor erred in allowing witnesses to testify concerning oral representations allegedly made by them at the time the appellees were considering purchasing lots and homes within the units. This concerned the type of homes being built and the general scheme or plan of development which the Warrens intended to pursue. Testimony reflected that the Warrens had discussed these intentions with the prospective buyers, assuring them that only single family homes would be constructed, that no apartments would be constructed and that no mobile homes would be placed in any of the three

units. Further, the appellees testified that they relied on these statements, at least in part, in deciding to purchase from the Warrens. At least one witness said he was told no duplexes would be built. Generally, duplexes were not mentioned.

While parol evidence is generally inadmissible to vary or contradict the language of a restrictive covenant, *Linder Corp. v. Pyeatt,* 222 Ark. 949, 264 S.W.2d 619 (1954), such evidence is admissible to establish a general building plan or scheme of development and improvement. Such plan or scheme can be proven by express covenant, by implication from a field map, or by parol representation made in sales brochures, maps, advertising, or oral statements upon which the purchaser relied in making his decision to purchase. 20 Am. Jur. 2d *Covenants* § 175. This general scheme is shown by the deeds and by the oral statements of the Warrens. Seven of the nine deeds in Unit One are restricted to residential use. Thirteen of 21 deeds in Unit Two are restricted to residential use. In Unit Three, 12 of the 20 deeds contain similar restrictions. Mrs. Warren testified that she and Mr. Warren intended to insert the restrictions in all deeds in the three units. She also testified that they were aware that the prospective purchasers were relying on their oral representations in deciding whether or not to buy. The subdivisions, themselves, consisted of single-family dwellings only at the time the appellees purchased their lots and homes. Both Warrens testified that the economy dictated they change their plans and build the duplexes rather than single family residences.

The Warrens argue that the chancellor erred in finding that the restrictions contained in the deeds of the appellees were the proper basis for enjoining the construction of the duplexes. They contend that the wording of the restrictions does not limit their development to single family dwellings, but rather, that multi-family use was permissible, citing *Shermer v. Haynes,* 248 Ark. 255, 451 S.W.2d 445 (1970). There, we held that covenants which restrict use to "residence" or "dwelling" purpose alone, generally do not have the effect of forbidding the erection or maintenance of multiple family dwellings. However, the chancellor in this

case had testimony and facts of a total building and selling scheme which indicate single residence purposes only. Further, the testimony reflects that the oral representations, combined with the express covenants, were the basis of the purchasers' decisions to buy lots in the neighborhood.

The homes in the units display a uniformity of development, further indication of the general plan and scheme.

These restrictions are enforceable against the lots retained by the Warrens in the three units as a reciprocal negative easement. When the grantor places an express restriction in deeds to his grantees within the particular development, the restriction attaches to the lots retained to prevent their use in a manner detrimental to the enjoyment and value of neighboring lots sold with the restriction. 20 Am. Jur. 2d *Covenants* § 173. The Warrens had the restrictions placed in their grantees' deeds, and the chancellor's findings support a conclusion that the Warrens intended to bind all the lots sold within the three units.

Finally, the Warrens challenge the standing of homeowners in Units One and Two to seek enforcement of the restrictions against the lots retained by the Warrens in Unit Three. They argue that these first two subdivisions are legally separate subdivisions and, as such, the owners within them can not have the restrictions enforced in the third, separate subdivision. However, in the negotiations leading to the purchase, the Warrens represented that the development would consist of some 350 homes, all being single family dwellings. The buyers were shown a master plat which depicted the three subdivisions as a single development, with only a line distinguishing the boundaries of each unit. Otherwise, there are no visible boundaries or divisions between the units. The buyers relied upon these factors in making their decision to purchase. Also, at least two of the appellees were homeowners in Unit Three.

While the chancellor based his decision on narrow reasoning, we must affirm unless the decision is clearly erroneous. A.R.C.P. Rule 52, *Armstrong* v. *Harrell*, 279

Ark. 24, 648 S.W.2d 450 (1982). The distinctive facts in this case support the chancellor's conclusion and since we cannot say he was clearly erroneous, we affirm his decision.

Affirmed.