Bill and Cindy MINIAT, et al. *v.* Eugenia Brown
McGINNIS

CA 88-42                                    762 S.W.2d 390

Court of Appeals of Arkansas
Division I
Opinion delivered December 21, 1988

158

*Morgan E. Welch*, for appellants.

*Benjamin C. McMinn*, for appellee.

DONALD L. CORBIN, Chief Judge. This appeal comes to us from the Pulaski County Chancery Court, Third Division. Appellants appeal from the opinion and order denying their complaint for injunctive relief and damages. We affirm.

Appellant property owners initiated this action by seeking an injunction to prevent construction of a seventy-two bed, long-term care institution near their property in an unincorporated area of North Pulaski County. Appellee, Eugenia Brown McGinnis, d/b/a Brown's Homes and Brown Properties, Inc. (hereinafter McGinnis), seeks to build the institution on a five-acre tract of land purchased from appellee Estate of Carrie Burton. The McGinnis property is Tract 1 of Woodland Valley Estates. Appellants are property owners who own property in Woodland Valley Estates and residents of Arbor Oaks Subdivision whose backyards abut the southern property line of Tract 1. After hearing several days of testimony and inspecting the present facility personally, the chancellor, by order dated July 20, 1987, denied appellants' request for an injunction. From the order, comes this appeal.

For reversal, appellants raise the following points: (1) The chancellor erred in holding as a matter of law that the court cannot enjoin a prospective nuisance; (2) the chancellor's findings

of facts on the private nuisance count are clearly erroneous; and (3) the chancellor's findings of fact on the restrictive covenant count are clearly erroneous. We address their points in order.

First, appellants contend that the chancellor erred in holding as a matter of law that the court cannot enjoin a prospective nuisance. Specifically, in their brief, appellants argue that "[w]ith the Order and Opinion taken as a whole, the Chancellor appears to hold that a court of equity loses its injunctive power over a facility which is in compliance with state regulations while a suit to enjoin its operations as a nuisance is pending" and that such a holding is erroneous. While we agree that the chancellor considered relevant the fact that the present facility was in compliance with state regulations, we cannot agree that the chancellor made the holding alleged. In her opinion and order, the chancellor went to great length to discuss cases in which enjoining an otherwise lawful operation as a prospective nuisance has been and would be proper, and correctly stated that the question of whether a proposed use will constitute a nuisance is one of fact. *See Phillips* v. *Adams*, 228 Ark. 592, 309 S.W.2d 205 (1958). Furthermore, in conclusion, the chancellor stated, "Case law and public policy have been so defined that the Court must rule in favor of the home's construction *under the facts in this case*." Because the holding alleged was not made by the court, appellants' first point is without merit.

Next, appellants argue that the chancellor's findings of fact on the private nuisance count are clearly erroneous. On appeal, we review chancery decisions *de novo* and reverse the chancellor's findings only if clearly erroneous or clearly against the preponderance of the evidence. *Cuzick* v. *Lesly*, 16 Ark. App. 237, 700 S.W.2d 63 (1985). It is well settled that ordinarily an injunction preventing the erection of a structure will not be granted unless the structure is a nuisance *per se*. *Cooper* v. *Whissen*, 95 Ark. 545, 130 S.W. 703 (1910). A nuisance at law or a nuisance *per se* is an act, occupation or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. *Jones* v. *Little Rock Boys' Club*, 182 Ark. 1050, 34 S.W.2d 222 (1931). However, equity will enjoin conduct that culminates in a private nuisance where the resultant injury to nearby property and residents is certain, substantial and beyond speculation and conjecture, even though it does not

constitute a nuisance *per se. See, e.g., Arkansas Release Guidance Found.* v. *Needler*, 252 Ark. 194, 477 S.W.2d 821 (1972); *Howard* v. *Etchieson*, 228 Ark. 809, 310 S.W.2d 473 (1958); *Bickley* v. *Morgan Utilities Co.*, 173 Ark. 1038, 294 S.W. 38 (1927); *Huddleston* v. *Burnett*, 172 Ark. 216, 287 S.W. 1013 (1926).

The erection of the building itself could not constitute a nuisance, and it is not insisted that it would be, but only that, as erected and operated as it had been formerly, it would constitute a nuisance. Where, as here, the alleged nuisance to be prospectively enjoined is one in fact rather than at law, such prohibition is permissible only when the preponderance of the evidence shows that the activity is certain to be a nuisance. *City of Newport* v. *Emery*, 262 Ark. 591, 559 S.W.2d 707 (1977).

■ The record reflects that appellee has operated a long-term care institution for mentally ill and disabled persons who are incapable of living alone for approximately thirteen years. During September of 1986, the institution housed fifty residents, forty of whom were schizophrenic and two of whom were manic depressives. Appellee purchased the tract of land in Woodland Valley Estates to build a new facility. At trial, numerous homeowners around the present facility testified regarding the behavior of the residents. Testimony was presented that, among other things, the residents of the present facility have a tendency to roam about the neighborhood appealing to people for food, money, cigarettes and clothing; that on occasion they delve through homeowners' garbage cans; and that the residents have been the subject of numerous police reports. An expert in real estate appraisal also opined that construction of the facility at the proposed location would reduce the value of the property by a total of $157,000 for nine nearby tracts. However, as we have noted before, the construction of a jail or gas station in an essentially residential area may cause a depreciation in property values, but not a nuisance. *City of Newport*, 262 Ark. at 594, 559 S.W.2d at 709.

■■ Appellants attempted to show that the present facility was being operated as a nuisance and therefore the proposed facility would also be operated as a nuisance. In support of their contention appellants put great reliance in a statement made by

appellee that she would not change her method of operation in the future. However, upon our review of the record it appears the statement was made in the context of eviction procedures alone. Appellee testified that when a resident is evicted, they are allowed to go wherever they want because they are their own legal guardians, and state regulations prohibit appellee from requiring them to go to another institution or anywhere else. We do not believe that the statement was directed at the overall operation of the facility. In any event, the chancellor, although recognizing that problems existed with the present facility, did not find that it was being operated as a nuisance, nor do we decide the issue. However, even had the present facility been found to be a nuisance, such a finding would not have been conclusive as to operation of the future facility. In *Jones* v. *Little Rock Boys' Club*, 182 Ark. 1050, 34 S.W.2d 222 (1931), the court apparently conceded that operation of the boys' club at its present location constituted a nuisance, but it nevertheless refused to enjoin construction of a new facility because it was not shown that the club could not be operated without becoming a nuisance. Likewise, we cannot say that the facility in question will certainly amount to a nuisance in its new location. It may, as appellants' proof tends to indicate, prove to be a serious annoyance to residents in the vicinity, but on the other hand it may turn out that the facility is operated in a manner that it does not become a nuisance. Because the evidence leaves a doubt, and is not certain regarding whether the facility will be operated as a nuisance, we cannot say that the chancellor's finding that construction should not be enjoined is clearly erroneous. We do point out, however, as the chancellor did, that the appellee proceeds with construction at her own risk, this action being without prejudice to appellants' right to file another suit if the facility does in fact become a nuisance. *See Kimmons* v. *Benson*, 220 Ark. 299, 247 S.W.2d 468 (1952); *Little Rock Boys' Club*, 182 Ark. at 1050, 34 S.W.2d at 222.

Finally, appellants argue that the chancellor's findings of fact on the restrictive covenant count are clearly erroneous. Only the appellants who own property in Woodland Valley Estates raise this contention. Specifically, they argue that a general scheme of development exists in the area, so as to create an implied restrictive covenant which excludes a seventy-two bed

facility from being constructed in Woodland Valley Estates.

The grantor of each tract in Woodland Valley Estates was the Estate of Carrie Burton. The only express restrictive covenants contained in the grantees' deeds were that no mobile homes were allowed and that no newly-constructed dwellings contain less than 1,500 square feet. While parol evidence is generally inadmissible to vary or contradict the language of a restrictive covenant, such evidence is admissible to establish a general building plan or scheme of development and improvement. *Warren* v. *Detlefsen*, 281 Ark. 196, 663 S.W.2d 710 (1984). Such plan or scheme can be proven by express covenant, by implication from a field map, or by parol representations made in sales brochures, maps, advertising, or oral statements upon which the purchaser relied in making his decision to purchase. *Id.* Appellants attempted to prove at trial that the real estate agent for the Estate of Carrie Burton made representations to them as purchasers that the property could be used only for single-family residential purposes and that they relied on the representations in purchasing tracts in Woodland Valley Estates. Sarah Shelton, the real estate agent, denied having made such representations. Other testimony was presented regarding the manner in which the property was advertised, marketed, and was listed for sale, which appellants contend supports their position. The chancellor specifically found that Ms. Shelton did not make specific representations that construction would be limited to single-family residences. Although we review chancery cases *de novo* on the record, we do not disturb the chancellor's findings unless they are clearly erroneous, giving due deference to his superior position to observe the witnesses and weigh their credibility. *Andres* v. *Andres*, 1 Ark. App. 75, 613 S.W.2d 404 (1981); Ark. R. Civ. P. 52(a). Whether or not Ms. Shelton made representations regarding single-family occupancy is clearly a question of credibility and because of her superior position, we defer to the chancellor's finding in that respect. Whether the manner of marketing and advertisement of the tracts for sale created an implied restrictive covenant is a question of fact, and we cannot say that the chancellor was clearly erroneous in finding that it did not.

Affirmed.

JENNINGS and COULSON, JJ., agree.