J. H. ROBINETTE ET AL *v.* CLAUDE H. BROOKS ET AL

5-3951                                                       408 S. W. 2d 490

Opinion delivered November 21, 1966

*Guy H. Jones,* for appellant.

*Robert W. Henry,* for appellee.

HUGH M. BLAND, Justice. This is a suit to quiet title to 40 acres of land in Faulkner County, Arkansas. In 1953 appellees leased the 40-acre tract from Mrs. Minnie Meeks, constructed fencing around the land thereby enclosing it within their overall or perimeter fences. In 1956 Mrs. Meeks discovered that she did not own this particular tract but appellees continued in possession, pasturing the lands, built a road to and across it, cut posts off of it and otherwise used the land as their own.

In 1964 appellants obtained a quitclaim deed to the land from the widow of C. E. Gentry who had obtained a deed from one John Griffith purporting to convey to him an undivided one-half interest in the land. The only claim Griffith had was a tax deed from the State issued in January 1930 for forfeiture of the taxes in 1923. On January 20, 1930 Mr. Griffith executed and delivered a quitclaim deed to H. L. Henry and C. E. Gentry. Mr. Gentry died testate in 1952, devising his property to his widow, Edna M. Gentry. Mrs. Gentry then executed and delivered a quitclaim deed to appellant, John H. Robinette, on May 21, 1964. Appellants' predecessors in title, including John Griffith, were never in possession of the lands and did not pay the taxes.

The taxes upon these lands for 1945 to and including 1962 were paid by Robert C. Carmichael, originally a party to the suit until appellees obtained a quitclaim deed from Carmichael and his wife. Mr. Carmichael testified he paid these taxes by mistake. Appellee paid the taxes for 1963 and appellants paid them for 1964.

Four witnesses testified for appellees and clearly established that appellee purchased 410 acres in 1952 and all of these lands were enclosed with a continuous fence and since leasing the lands in 1953, has maintained

his fences so as to enclose the subject property within his overall fences.

To rebut this testimony appellants produced one witness, John H. Robinette, who testified as to the fencing but added little, if any, to the testimony already adduced since he had not seen subject lands and had not been in the area from 1953 to 1963.

After trial, the court found that the appellees have had actual pedal, adverse possession of the 40 acres in question for the statutory period prior to institution of this suit on September 16, 1964; that the pasturing of cattle for at least seven years prior to suit, when taken together with the cutting of posts, working a small road to reach said lands, the maintenance of substantial fences around the lands and all of the other lands occupied by appellees by lease or otherwise; that said lands were enclosed and appellees' cattle were kept within the overall fence and enclosure. The court entered a decree quieting title to the lands in appellees.

For reversal, appellants contend (1) that appellees do not have a claim of adverse possession under color of title, (2) non-payment of taxes by appellees, (3) appellees did not occupy said lands for statutory period, (4) no notice to anyone that appellees claimed said lands and (5) that appellees never had any actual, open, notorious, continuous, hostile and exclusive possession of the land involved.

We see no merit in any of the contentions of appellants.

Both parties cite Varn's Annotated Supplement to Jones, Arkansas Titles, § 1498, page 910, as a correct statement of the law of this state:

"In order that adverse possession may ripen into ownership, possession for seven years must have been actual, open, notorious, peaceable, continuous, hostile, and exclusive. It must be accompanied with

an intent to hold adversely—in derogation of and not in conformity with the right of the true owner.''

The testimony of the witnesses clearly establishes that notoriety of possession, as defined in *Terral* v. *Brooks,* 194 Ark. 311, 108 S. W. 2d 489 and *Newman* v. *Newman,* 205 Ark. 590, 169 S. W. 2d 667, was proven by a preponderance of the evidence.

On the question of notice, we have consistently held that notice of adverse possession may be actual or it may be implied by facts and circumstances such as pasturing stock, the existence of fences, the cultivation or improvement of land. *Black* v. *Clary,* 235 Ark. 1001, 363 S. W. 2d 528; *Lollar* v. *Appleby,* 213 Ark. 424, 210 S. W. 2d 900.

The main contention urged by appellants is that appellees did not construct a fence around all four sides of this particular 40-acre tract. This 40 acres is, however, within the perimeter of the overall fence around all of appellee's lands. This contention is refuted in the case of *Burns* v. *Mims,* 224 Ark. 776, 276 S. W. 2d 76, where we said:

''* * * Hostility of possession is to be judged by the views and intentions of the person occupying the property, not by those of the landowner whose title is being extinguished. *Trapnall* v. *Burton,* 24 Ark. 371, 395. It was enough for the appellee to erect a single fence encircling the entire tract; he was not required to subdivide his claim by the construction of cross fences conforming to the record ownership of the interior lots. The appellant was put on notice of the hostile claim by the fact that his access to his lots was obstructed from every direction.''

See, also, *Kieffer* v. *Williams,* 240 Ark. 514, 400 S.W. 2d 485 (1966).

The chancellor made the following findings of fact:

''The sole issue for decision in this case is whether plaintiffs have had actual pedal, adverse possession of the 40 acres in question for the statutory period prior to institution of this suit on September 16, 1964. It is held that the pasturing of cattle for at least 7 years prior to suit, when taken together with the cutting of posts, the road work, and the overall enclosure, is sufficient to constitute adverse possession of the lands in question. The evidence shows that substantial fences were maintained around plaintiffs' lands and all of the other lands, and even though gates were across the public road, this did not prevent the enclosure. The cattle were kept within the overall fence and this was not an open range type of situation...''

Finding no error, the decree of the chancery court is affirmed.