Nudie Mae WELDER *v.* James R. WIGGS,
Odissia Wiggs, Edwin Hubach, Lou Hubach,
Larry V. Taylor, and Betty S. Taylor

CA 89-389                                    790 S.W.2d 913

Court of Appeals of Arkansas
Division II
Opinion delivered June 13, 1990
[Rehearing denied August 22, 1990.]

*Jones & Tiller Law Firm*, by: *Marquis E. Jones*, for appellant.

*Lightle, Beebe, Raney and Bell*, by: *Donald P. Raney*, for appellees.

GEORGE K. CRACRAFT, Judge. Nudie Mae Welder appeals from an order of the White County Chancery Court quieting title to parcels of land in favor of appellees James and Odissia Wiggs, Edwin and Lou Hubach, and Larry and Betty Taylor. We find no error and affirm.

The forty-acre tract in issue, which is located in White County, was owned by Elijah Moore at the time of his death in 1919. Moore left no will and was survived by five children, one of whom was appellant's mother. Upon the death of her mother in 1929, appellant acquired her one-fifth interest in the property. Appellant purchased the one-fifth interest of another child of Elijah Moore in 1945.

In 1952, four persons, claiming to be the sole surviving heirs of Moore, executed a warranty deed purporting to convey fee title to the forty acres to Arthur Bone. In 1953, Bone conveyed the forty-acre tract to Arthur and Annette Bartell. In 1970, the Bartells conveyed a portion of the tract to appellees Wiggs, and in 1971 and 1976 conveyed portions to appellees Taylor. In 1973, the Bartells conveyed the balance of the tract to Harold Huntsman. In that same year, Huntsman conveyed the property to the appellees Edwin and Lou Hubach. All of the deeds in appellees' chain of title from Bone purported to convey title in fee and contained full covenants of warranty.

In May of 1988, appellant brought this action in partition, alleging that she is the owner of a two-fifths undivided interest in the lands occupied by appellees. Appellees answered and counterclaimed, asserting that they had acquired title to the lands by adverse possession and that appellant was estopped from asserting her claim and prayed that their titles to the respective properties be quieted in them. The chancellor found that appellees had sustained their burden of proving title by adverse possession, dismissed appellant's complaint, and quieted title in appellees.

In order to establish title by adverse possession,

appellees had the burden of proving that they had been in possession of the property continuously for more than seven years and that their possession was visible, notorious, distinct, exclusive, hostile, and with intent to hold as against the true owner. The proof required as to the extent of possession and dominion may vary according to the location and character of the land. It is ordinarily sufficient that the acts of ownership are of such a nature as one would exercise over his own property and would not exercise over that of another, and that the acts amount to such dominion over the land as to which it is reasonably adapted. Whether possession is adverse to the true owner is a question of fact. *Walker* v. *Hubbard*, 31 Ark. App. 43, 787 S.W.2d 251 (1990).

The record indicates that appellees Taylor built a residence and actually resided on their property. Mr. Taylor testified that they maintained the yard and a garden and made other improvements on the remainder of their property. Appellees Hubach cleared their property and built a barn and fences for their cattle that runs on the land. The appellees had paid all taxes due on their respective properties and each had executed mortgages, oil and gas leases and rights-of-way affecting the property.

Appellant does not contend that appellees were not in open, exclusive, notorious, and continuous possession of the land for the statutory period, but only that appellees' possession was not hostile or adverse to her. She argues that as Bone's predecessors owned only undivided interests in the forty-acre tract, Bone and his subsequent grantees became her cotenants. Therefore, appellant argues that one cotenant cannot hold adversely to another merely by occupying the land, because possession by one cotenant is presumed to be the possession of all until such time as notice is brought home to the other cotenant that one is holding adversely to him. *See Hirsch* v. *Patterson*, 269 Ark. 532, 601 S.W.2d 879 (1980).

■ The rule of general application is that one entering into possession of land under a deed of conveyance is presumed to occupy and to claim only the interest named in the conveyance. Where one enters under a deed purporting to convey only an undivided interest, it is presumed that he claims only that undivided interest and that his occupancy is not adverse to his

cotenants. *Patterson* v. *Miller*, 154 Ark. 124, 241 S.W. 875 (1922).

Here, however, the cotenants conveyed the lands to a stranger by a deed purporting to convey the entire fee, and that stranger entered into possession of the land. The chancellor correctly ruled that under these circumstances the stranger is presumed to have occupied the land with the intent to claim interest in the whole tract, as described in his deed. The rule is stated in *Watkins* v. *Johnson*, 237 Ark. 184, 187, 372 S.W.2d 243, 245 (1963), as follows:

> In a long line of cases we have held when a co-tenant executes a deed to a stranger to the title, describing the entire land, and such grantee enters into exclusive possession under such deed, then such deed constitutes color of title, and such entry commences the running of limitation in favor of the grantee and against all the other co-tenants of the grantor. *Parsons* v. *Sharpe*, 102 Ark. 611, 145 S.W. 537; *Jackson* v. *Cole*, 146 Ark. 565, 226 S.W. 513; *Landman* v. *Fincher*, 196 Ark. 609, 119 S.W.2d 521; *Ulrich* v. *Coleman*, 218 Ark. 236, 235 S.W.2d 868.

In *Jackson* v. *Cole*, 146 Ark. 565, 571, 226 S.W. 513, 515 (1920), the court stated:

> A conveyance to a stranger to the title, by one cotenant, by an instrument purporting to pass the entire title in severalty, and not merely such cotenant's individual interest, followed by an entry into actual, open and exclusive possession by such a stranger, under claim of ownership in severalty, amounts to a disseisin of the other cotenants, which, if continued for the statutory period, will ripen into good title by adverse possession. * * * In considering this question the familiar principle is recalled that when one enters upon land, he is presumed to enter under the title which his deed purports upon its face to convey, both as respects the extent of the land and the nature of his interest.

Appellant contends that, in any event, she had no notice of appellees' adverse claim and the statute of limitations could not run against her. We disagree. A landowner has a duty to

keep herself informed as to adverse occupancy of her property. *Reeves* v. *Metropolitan Trust Company*, 254 Ark. 1002, 498 S.W.2d 2 (1973). Actual notice of adverse possession is not essential. One claiming lands adversely under color of title need not give affirmative notice to another residing in a distant place that he is claiming ownership of the land where he has no knowledge of the existence, whereabouts, or claim of interest of another in the land. *Miller* v. *Chicago Mill & Lumber Co.*, 140 Ark. 639, 215 S.W.2d 900 (1919); *Scott* v. *Hill*, 1 Ark. App. 281, 614 S.W.2d 690 (1981). While a true owner must have knowledge or notice that possession of another is hostile, this may consist of either actual knowledge or constructive notice, arising from the openness and notoriety of the possession. Constructive notice is that which would reasonably indicate to the owner, if he visits the premises and is a man of ordinary prudence, that a claim of ownership adverse to his own is being asserted.

Here, appellant testified that she lived in Little Rock, Pulaski County, and had never been in possession of the property or paid any taxes on it. She stated that she had not seen the property until sometime in 1986 or 1987. There was no evidence that appellees were aware of her whereabouts or that she claimed an interest in the land prior to 1986. A neighbor of appellees testified that she could see the Taylors' residence, and the activities conducted by the other appellees on their properties, from her home. She stated that there was a well-travelled highway that ran in front of the property and anyone travelling the road could readily see the activity being conducted on the property. Appellant was therefore on constructive notice of those activities that she would have observed had she visited the property.

Although we review chancery cases *de novo* on the record, we do not reverse a chancellor's findings unless they are clearly against the preponderance of the evidence, giving due deference to his superior position to observe the witnesses and

weigh their credibility. *Miniat* v. *McGinnis*, 26 Ark. App. 157, 762 S.W.2d 390 (1988); Ark. R. Civ. P. 52(2). From our review of the record, we cannot conclude that the chancellor's finding that appellees met the requirements necessary to give them title to the disputed tract by adverse possession is clearly erroneous.

Affirmed.

MAYFIELD and COOPER, JJ., agree.