Larry McLAUGHLIN, Marsha McLaughlin, Mike Skidmore,
and Elaine Skidmore *v.* Samuel SICARD and Melissa Sicard

CA 98-131                                          977 S.W.2d 1

Court of Appeals of Arkansas
Division IV
Opinion delivered October 21, 1998

*Gean, Gean & Gean*, by: *Roy Gean III*, for appellants.

*Walters, Hamby & Verkamp*, by: *Bill Walters*, for appellees.

JUDITH ROGERS, Judge. Appellants Larry and Marsha McLaughlin and Mike and Elaine Skidmore appeal the Sebastian County Chancery Court's order quieting title in appellees to forty-one acres of land. We affirm.

In June 1996, appellees filed in chancery court a petition to quiet title. They requested that the chancery court quiet title in them to a particular forty-one-acre tract. Appellees asserted that they had acquired title to this property by deed, which they acquired from James and Phyllis Gilker in September 1974. Appellees alleged further that, at the time they received title to the land from the Gilkers, the Gilkers had been in possession of the land for thirteen years. Finally, appellees alleged that title to the land should be quieted in them because they had adversely possessed the land for twenty-two years and that their predecessors in

interest, the Gilkers, had adversely possessed the land prior to September 1974.

In June 1997, the chancery court held a hearing in connection with appellees' petition. On July 23, 1997, the chancery court handed down an order quieting title to the forty-one acres in appellees. The chancery court found:

> [The] Court finds that, the Gilkers, entered into possession of the subject real property in 1961 and remained in continuous possession of the subject property from 1961 to 1974. That the Gilkers maintained the subject property as part of their farming and cattle operation for the period from 1961 through 1974. That during that entire period, the subject property was part of the farm that was continuously under fence. The subject property and the surrounding property was used for the primary purpose of operating a cattle company and was therefore not wild and unimproved and unenclosed property.
>
> The Court further finds that the Gilkers' possession of the subject property was continuous for the 13 years and that it was held adverse to the rights of the true owners; that the Gilkers' possession was visible, exclusive, hostile and open for the 13 year period and the Gilkers' possession was intentional. That the Gilkers acquired title to this subject property by adverse possession.
>
> That the Plaintiffs obtained color of title to this property when they received and recorded a quit claim deed from the Gilkers for the subject property in 1974. The quit claim deed executed by the Gilkers who had obtained title to this property by adverse possession, conveyed to the Sicards the interest that the Gilkers had obtained by adverse possession. That the Plaintiffs have had possession of the subject real property since 1974.
>
> The Court is cognizant of the fact that the Defendants and their predecessors in title have continuously paid the property taxes on the subject real property. However, the Court finds that since the property is not to be considered as wild and unimproved and unenclosed property, that the statutory provisions allowing acquisition by payment of property taxes is not applicable in this case.

Appellants challenge these findings of fact.

Specifically, appellants assert that the chancery court erred in finding that the forty-one-acre tract was enclosed by a fence and was "not . . . wild and unimproved and unenclosed property." Appellants also argue that, because appellees did not pay property taxes on the forty-one acres, they do not have title to the land. Appellants also maintain that they never had notice that the land was being adversely possessed.

Appellants' allegations of error are meritless. They are meritless because, while appellants' arguments attack appellees' proof of adverse possession of the tract, their arguments fail to persuade us that the chancery court was clearly erroneous in finding that the appellees' predecessors in interest, the Gilkers, adversely possessed the forty-one acres from 1961 to 1974.

█ The standards governing our review of a chancery court decision are well established. Although we try chancery cases *de novo* on the record, we do not reverse unless we determine that the chancery court's findings were clearly erroneous. *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997). In reviewing a chancery court's findings, we give due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Jennings v. Burford, supra.*

█ The legal principles governing establishment of title to land by adverse possession are also well established. We recently set forth these principles as follows:

> It is well settled that, in order to establish title by adverse possession, appellee had the burden of proving that she had been in possession of the property continuously for more than seven years and that her possession was visible, notorious, distinct, exclusive, hostile, and with intent to hold against the true owner. The proof required as to the extent of possession and dominion may vary according to the location and character of the land. It is ordinarily sufficient that the acts of ownership are of such a nature as one would exercise over her own property and would not exercise over that of another, and that the acts amount to such dominion over the land as to which it is reasonably adapted. Whether possession is adverse to the true owner is a question of fact. *See Walker v. Hubbard*, 31 Ark. App. 43, 787 S.W.2d 251

(1990); *Hicks v. Flanagan*, 30 Ark. App. 53, 782 S.W.2d 587 (1990).

*Fulkerson v. Van Buren*, 60 Ark. App. 257, 259-60, 961 S.W.2d 780, 782 (1998) (quoting *Moses v. Dautartas*, 53 Ark. App. 242, 244, 922 S.W.2d 345, 347 (1996)). Adverse possession maintained for the statutory seven-year period vests title in the adverse possessor as completely as would a deed from the holder of record title. *See Neyland v. Hunter*, 282 Ark. 323, 668 S.W.2d 530 (1984); *Hart v. Sternberg*, 205 Ark. 929, 171 S.W.2d 475 (1943). A landowner has a duty to keep himself or herself informed as to the adverse occupancy of his or her property. *Welder v. Wiggs*, 31 Ark. App. 163, 790 S.W.2d 913 (1990). A landowner's knowledge that another person is in hostile possession of his land may consist of either actual knowledge or constructive notice. *Welder v. Wiggs, supra*. Constructive notice is that which would reasonably indicate to the landowner, if he visits the premises and is a person of ordinary prudence, that another person is asserting a claim of ownership adverse to his own. *Id.*

The Gilkers' adverse possession of the forty-one acres was established by the testimony of their son, Paul Gilker. At the June 1997 hearing, Paul Gilker testified that he remembered, in 1961, when he was six years old, that his father, James Gilker, purchased a farm. He testified further that his father built a fence around the farm. When asked if he had helped build the fence, he replied:

> I helped build [the fences], helped maintain them, and I walked them; because we were there from the time I was six until I was 16 or 17 years old when we sold the farm. We were running cattle on the farm at various levels of intensity. When I was a young man, my father had roughly 40,000 acres of land under lease, and we were running 2,000 to 3,000 cows. So I have done everything on the farm.

Mr. Gilker testified further that his father had the farm for about thirteen years and that he sold it in 1974.

With regard to the forty-one-acre tract at issue, Mr. Gilker testified that the tract was part of his family's farm and that it was fenced in with the rest of the farm in 1961 or 1962. He testified further that his father had a pond bulldozed out in the forty-one-

acre tract and that his family cleared the land around the pond and planted grass in the area. He specifically testified that his family cleared off "maybe half" of the forty-one acres. He also stated that his family cut hay from the upper part of the tract. With regard to the grazing of cattle on the land, Mr. Gilker testified: "We bought our first cattle in . . . 1961 or something. They were Black Angus and we got the Charlet Cattle and then we ran them, basically, until we sold it. We had some cattle down there all the time."

Mr. Gilker also testified that his family's use of the farm was continuous from 1961 to 1974. When asked if it would have been visible to anyone inspecting the farm that his family was using the forty-one acres at issue, he replied:

> If you came on the farm, yes, but the farm is in a remote location. But, yes, if you came on the farm, you could see we had enclosed. We built barns. We built, actually, three barns. A large hay barn, what we called the horse barn, and we built a loafing barn. We built the ponds. We had our trailer house we enclosed. It was an active farm.

Mr. Gilker testified further that his family's use of the forty-one-acre tract as part of their farm was visible.

■    This testimony by Paul Gilker was sufficient to establish that the Gilkers adversely possessed the forty-one-acre tract at issue as part of their farm, when they pastured cattle on their farm from 1961 to 1974. Proof of the enclosure of land, the maintenance of a fence enclosing the land, and the pasturage of cattle on the land is sufficient to prove adverse possession of the land. *See Morgan v. Downs*, 245 Ark. 328, 432 S.W.2d 454 (1968); *Robinette v. Brooks*, 241 Ark. 470, 408 S.W.2d 490 (1966); *McComb v. Saxe*, 92 Ark. 321, 122 S.W. 987 (1909).

■    Appellants argue in their brief that appellees failed to prove that the Gilkers had built a fence around the forty-one-acre tract at issue. It is true that Paul Gilker's testimony establishes only that the tract was part of the Gilkers' farm and that the entire farm was enclosed by a fence. However, the Gilkers could have adversely possessed the tract so long as it was within the fence around their farm. The Arkansas Supreme Court addressed this point of the law of adverse possession in *Burns v. Mims*, 224 Ark.

776, 276 S.W.2d 76 (1955). In this case, the court rejected appellant Burns's contention that a fence around a tract of land was not sufficient to put him on notice that appellee was adversely possessing three lots that lay near the center of the larger, enclosed tract. The court held:

> It is the appellant's principal contention that neither the fence nor the improvements touched the three lots to which the appellant has paper title. This is true. It happens that the three lots claimed by the appellant lie near the center of the tract; the perimeter fence at its closest point is about 150 feet north of the lots in dispute. This circumstance, however, does not refute [appellee's] claim. Hostility of possession is to be judged by the views and intentions of the person occupying the property, not by those of the landowner whose title is being extinguished . . . . It was enough for the appellee to erect a single fence encircling the entire tract; he was not required to subdivide his claim by the construction of cross fences conforming to the record ownership of the interior lots. The appellant was put on notice of the hostile claim by the fact that his access to his lots was obstructed from every direction.

*Burns v. Mims*, 224 Ark. at 777, 276 S.W.2d at 76-77 (internal citation omitted). *Accord Morgan v. Downs, supra; Robinette v. Brooks, supra.*

██ Paul Gilker's testimony also shows the meritlessness of appellants' contention that appellees do not own the forty-one acres because appellants have paid property taxes on the acreage since 1989. Paul Gilker's testimony establishes that his parents adversely possessed the tract and that they acquired title in 1968, seven years after they had purchased their farm and began their cattle operation there. In 1968, payment of property taxes was not an element of adverse possession. Payment of property taxes did become an element of adverse possession in 1995.[1] Even if the

---

[1] In 1995 the General Assembly added two general requirements for adverse possession of land. These two requirements, set forth in Ark. Code Ann. § 18-11-106(a)(1)(A) (Supp. 1997), are: (1) the holding of color of title to the land for at least seven years and (2) the payment of ad valorem taxes on the land during this seven-year period. See Shane P. Raley, *Note, Color of Title and the Payment of Taxes: The New Requirements Under Arkansas Adverse Possession Law*, 50 Ark. L. Rev. 489 (1997).

appellants had begun paying property taxes on the forty-one acres in 1961, they could not have acquired title to the acreage because, by then, it was no longer unimproved and unenclosed. *See Schmeltzer v. Scheid*, 203 Ark. 274, 157 S.W.2d 193 (1941).

Appellants also assert that appellees' possession of the forty-one acres was not sufficiently visible and notorious to put them on notice of appellees' adverse possession of the tract because appellees never told them that they were doing so. Appellants note that, in January 1989, appellant Michael Skidmore telephoned appellee Samuel Sicard and offered to sell the forty-one acres to him. Skidmore testified that Sicard offered him $100 an acre for the land. Appellants argue that, during this telephone conversation, Sicard did not tell Skidmore that he claimed title to the forty-one acres. According to appellants, Sicard's silence during this telephone conversation established the appellees' lack of visible and notorious holding of the forty-one acres necessary to establish adverse possession. We are unpersuaded by this argument for two reasons.

As noted above, one adversely possessing land is not required to give actual notice to the landowner that he is doing so — constructive notice is sufficient. *Welder v. Wiggs, supra.* Moreover, after an individual obtains title to land by adverse possession, his recognition that another may have a claim to the land does not divest title to the land from the adverse possessor nor does this recognition estop the adverse possessor from asserting title. *See Tull v. Ashcraft*, 231 Ark. 928, 333 S.W.2d 490 (1960); *Hart v. Sternberg, supra.* As noted above, the chancery court found that the Gilkers had title, by adverse possession, to the forty-one acres at least twenty years before the January 1989 telephone conversation between appellant Michael Skidmore and appellee Samuel Sicard. Appellee Sicard's silence during the January 1989 telephone conversation does not cast doubt on the title to the forty-one acres that he received from the Gilkers when he purchased their farm, which included the forty-one acres, in 1974. An adverse possessor's statements, such as an offer to another to purchase the land, do not divest the adverse possessor of title because the offer to purchase "may have been made in order to buy peace and avoid litigation, and not in recognition of appel-

lants' title." *Pitts v. Pitts*, 213 Ark. 379, 385, 210 S.W.2d 502, 505 (1948).

For the reasons set forth above, we affirm the Sebastian County Chancery Court's order quieting title to the forty-one acres at issue in appellees.

Affirmed.

ROBBINS, C.J., and BIRD, J., agree.