Robert Dale BOYD, Kennie Mae Boyd, & Donald Winningham *v.* James L. ROBERTS & Cynthia A. Roberts

CA 06-1050                                                              255 S.W.3d 895

Court of Appeals of Arkansas
Opinion delivered April 25, 2007

386

*Williams & Hutchinson, LLP*, by: *Timothy Hutchinson & James A. Roe*, for appellants.

*Woods, Snively & Associates, LLP,* by: *Tim Snively,* for appellees.

WENDELL L. GRIFFEN, Judge. This is the second appeal in this adverse-possession case. In the first appeal, our court reversed because the trial court misinterpreted the "contiguous" requirement under the adverse-possession statute. *Roberts v. Boyd,* 94 Ark. App. 345, 230 S.W.3d 301 (2006). On remand, the trial court quieted title to certain property owned by appellant Donald Winningham in appellees Cynthia and James Roberts. Winningham raises two points on appeal.[1] We affirm.

### Background

The following background is taken from this court's opinion in the first appeal.

> The Boyds purchased their property in 1981. At that time, a barbed-wire fence ran between the Boyd's property and the property to the east, which was purchased by the Robertses in 1990 via a land commissioner's sale.... [I]t is undisputed that the Robertses had color of title to their property and paid the requisite ad valorem taxes on their property.
>
> The Boyds had a survey performed in 2002, referred to in the record as the "Jorgensen survey," which revealed that the true property line, according to the parties' deeds, ran from seventy-five to ninety-six feet on the Robertses' side of the barbed-wire fence. Pursuant to this survey, new boundary lines were marked and staked. During the summer of 2004, after seeing the markers, Mr. Roberts contacted Mr. Boyd and was informed that the Boyds were claiming the property according to the new markers. Mr. Roberts was further informed of the Boyd's intention to sell the property to [appellant] Winningham.
>
> The Robertses filed suit against both the Boyds and Winningham to quiet title to the disputed portion of the property. The Boyds subsequently issued Winningham a deed to the property (Winningham deed). Winningham began removing the old fence and built a new fence based on the boundaries as determined by

---

[1] Kennie Mae and Robert Boyd, Winningham's predecessors-in-title, are also listed as appellants in the style of the case. However, the notice of appeal indicates that only Winningham is appealing the trial court's decree quieting title.

Doug Hemmingway, a surveyor who relied on the Jorgensen survey. The Robertses obtained an injunction to prevent further removal of the fence, pending the outcome of this case. [Winningham] counterclaimed, requesting that the court declare the boundary between the property established by the new barbed-wire fence constructed by Winningham pursuant to the Jorgensen survey.

94 Ark. App. at 346–47, 230 S.W.3d at 302-03 (footnote omitted). This court directed the trial court to make findings as to the sufficiency of the Robertses' acts of ownership regarding the disputed property.

On remand, the parties presented no new evidence. The following summary was from testimony presented during the first trial. James Roberts testified that the disputed property is described in the Winningham and Boyd deeds. He said that the disputed area is used as a pasture and a hay meadow and is the same type of land as his own. Roberts asserted that there were no other parties claiming an interest in, or having access to, the disputed "gap" area. Although he had no survey conducted since he purchased the property, Roberts said that he intended to possess up to the fence line. He also said that he had maintained the fence when needed. According to Roberts, there is a drainage ditch in the disputed area on the east side of the fence. He stated that he mowed the disputed area up to the ditch, fertilized part of the disputed area, planted Bermuda grass on another part of the disputed area, and allowed his horses to graze in the disputed area. Roberts said that although he had cut down some trees along the drainage ditch, he had begun to allow the ditch to become overgrown. He stated that part of the fence was not visible due to vegetation.

Robert Boyd testified that he owned what is now Winningham's property for twenty-two years and that the fence was in the same location the entire time. He said that he had always occupied the property up to the west side of the fence. He was aware that the true line was east of the fence but did not know the true line's exact position because of the drainage ditch, adding that he "just went by that fence." Boyd also acknowledged that the Robertses have had continuous possession of their property for fourteen years and that they used it as a horse pasture. He said that Roberts mowed the property as close to the ditch as he could and that the ditch prevented him from mowing up to the fence. He stated that Roberts cleaned the ditch up to the fence line. Boyd did not recall seeing Roberts repair the fence, adding that he (Boyd) maintained a "cattle gap" in the fence where it crosses a creek.

Donald Winningham testified that he was asking the court to establish the survey line as the boundary line. He said that, in preparation for purchasing the property, he walked the lines with Robert Boyd and found all of the pins except for the southeast corner pin. At that time, he noticed that the fence had been maintained and patched in places. He described the fence as eroding into the ditch in certain places. He acknowledged that Boyd told him that the true line was east of the fence. Winningham said that he did not know where the fence line was because of the growth and that he assumed that Roberts knew the location of the true line. Winningham admitted that he saw Roberts bushhogging the property prior to the closing of the transaction with the Boyds. However, he also said that one could not tell that the south pasture had been mowed between the time of the purchase and trial. He described areas around a pond that were impenetrable due to vegetation and that, because of the vegetation, he could not tell if the fence existed in places or whether it had been eroded. He stated that a portion of the Robertses' usable hay field was in the disputed area. Winningham said that he was able to determine that there had not been any mowing or other work near the edge of the ditch, adding that, when he saw Roberts, Roberts was at least twenty feet from the ditch.

Kennie Mae Boyd testified that she and her husband were told when they purchased the property that the fence was not on the boundary line. She acknowledged seeing James Roberts bush-hogging the property once or twice a year but denied seeing him repair the fence. She asserted that her husband made repairs to the fence when needed. She said that Robertses' property was nor-mally used as a horse pasture. She said that she and her husband did not discuss the property line with the Robertses.

The trial court issued a letter opinion in which it found that the Robertses considered the fence to be the boundary and that the Boyds thought the fence was as close to the line as physically possible. The Robertses were found to have possessed the disputed property by maintaining the fence, mowing as close as possible to the fence, and running horses on the disputed area. The court further found that the Boyds and Winningham did not dispute that the Robertses had color of title and paid the taxes on their property or that the Robertses' activities lasted more than seven years. The trial court also found that the Robertses had the requisite intent to adversely possess the property by finding that the Robertses took possession under the belief that they owned the property. The trial

court also found that no other party owned the "gap" property and that it was subject to the court's ruling. The court awarded the Robertses judgment in the sum of $511.28 against Winningham for destruction of the fence. A decree quieting title in the Robertses was entered, and Winningham filed a timely notice of appeal.

*Standard of Review*

The standards governing appellate review of an equity matter are well established. Although this court reviews equity cases de novo on the record, we do not reverse unless we determine that the trial court's findings of fact were clearly erroneous. *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996). In reviewing a trial court's findings of fact, we give due deference to the trial judge's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Id.*

*Arguments on Appeal*

Winningham first argues that the Robertses did not prove all of the elements of adverse possession. Specifically, Winningham argues that the disputed tract was not enclosed, that the disputed tract was not actually possessed by the Robertses, and that the Robertses did not prove that their possession was "open and notorious."

As the first subpoint under this issue, Winningham argues that the disputed area is not "enclosed" because the fence surrounding it was degraded prior to its removal by Winningham. While the construction of a fence is not necessary to constitute adverse possession, *Culver v. Gillian*, 160 Ark. 397, 254 S.W. 681 (1923), fencing the disputed area is an act of ownership evidencing adverse possession. *Blackburn v. Brown*, 168 Ark. 743, 271 S.W. 328 (1925). In his brief, Winningham argues that a videotape exhibit shows the "degraded" fence and several thickets that the fence runs through. However, the fact that the fence may have been degraded does not necessarily mean that the property is no longer "enclosed." "The question, after all, in such cases is whether the enclosure, like other acts of possession and claim of ownership, is sufficient to 'fly the flag' over the land and put the true owner upon notice that his land is held under an adverse claim of ownership." *Dowdle v. Wheeler*, 76 Ark. 529, 534, 89 S.W. 1002, 1004 (1905). The fence in this case was visible enough so that all of

the parties knew it existed when they purchased their respective properties. Moreover, regardless of the fence's condition, the parties undisputedly treated the fence as the boundary between their properties. On these facts, Winningham is hard-pressed to argue that the property was not sufficiently enclosed so as to provide notice that the Robertses were claiming the land up to the fence.

Winningham also argues a second subpoint that the Robertses did not actually possess the entire disputed area because a ditch prevented them from mowing all the way to the fence. The proof required as to the extent of possession and dominion may vary according to the location and character of the land. *Ward v. Adams*, 66 Ark. App. 208, 989 S.W.2d 550 (1999); *Welder v. Wiggs*, 31 Ark. App. 163, 790 S.W.2d 913 (1990). Here, James Roberts testified, and the trial court found, that he mowed as much of the disputed area as he was physically able. Because the disputed tract was enclosed, the Robertses' possession of any part thereof is constructive possession of the entire enclosure. *Kieffer v. Williams*, 240 Ark. 514, 400 S.W.2d 485 (1966); *see also Moses v. Dautartas*, 53 Ark. App. 242, 922 S.W.2d 345 (1996).

Winningham also argues that the Robertses' possession was not "open and notorious." Actual possession of real estate is notice to the world of claim or interest of one in possession, regardless of whether such claimant has on record a written instrument creating in him an interest or title. *Clinton Sch. Dist. No. 1 v. Henley*, 212 Ark. 643, 207 S.W.2d 713 (1948). Notice of adverse possession may be inferred from facts and circumstances, such as grazing livestock, erection of a fence, or improving the land. *Black v. Clary*, 235 Ark. 1001, 363 S. W. 2d 528 (1963); *McLaughlin v. Sicard*, 63 Ark. App. 212, 977 S.W.2d 1 (1998).

Winningham correctly insists that the grazing of livestock on the property or the mere mowing of the property is not sufficient notice of a hostile claim to the property. *See Cooper v. Cooper*, 251 Ark. 1007, 476 S.W.2d 223 (1972); *DeMers v. Graupner*, 186 Ark. 214, 53 S.W.2d 8 (1932). However, the Robertses' acts of ownership were not limited to merely grazing livestock or mowing. Instead, the Robertses' activities were visible to all and were the type that would normally be done by one claiming ownership. Mr. Roberts converted the property on the northern end to make it suitable for livestock by plowing up weeds and scrub oak and by thereafter cultivating, fertilizing, and planting Bermuda grass. He

also spread chicken litter (fertilizer) across the upper end all the way over to the drainage ditch. On this portion of the property, he also kept two horses. Notably, in doing so, *he changed the nature of the property itself*, which is an act that one would exercise over his own property and not over the property of another. As such, this conduct was surely a sufficient act of ownership to put the Boyds on notice that the Robertses claimed ownership of the property. *See Walker v. Hubbard*, 31 Ark. App. 43, 787 S.W.2d 251 (1990) (holding that claimants proved adverse possession of adjacent wild property by virtue of landscaping and maintaining trees, shrubs, and grasses that were not indigenous to the land).

■ While the Boyds claimed that they never saw Mr. Roberts maintaining the fence, a prudent owner exercising ordinary care over the property would have seen evidence that the fence was being maintained by someone else. A landowner has a duty to keep himself or herself informed as to the adverse occupancy of his or her property. *See McLaughlin, supra.* On these facts, we cannot conclude that the trial court was clearly erroneous in finding that the Robertses had proven the elements of adverse possession.

In his second point, Winningham argues that the trial court erred in finding that the "gap" property was contiguous to the Robertses' property because the trial court lacked subject-matter jurisdiction to quiet title in the "gap" property. Winningham relies on *Koonce v. Mitchell*, 341 Ark. 716, 19 S.W.3d 603 (2000), which held that, in the absence of compliance with the notice requirements of Ark. Code Ann. § 18-60-503 (1987), the plaintiff could not make a prima facie case to quiet title, and the trial court lacked subject-matter jurisdiction to adjudicate the rights of the parties to the land.

■ Winningham misinterprets the holding of *Koonce*. In *Koonce*, it was clear from the evidence, and acknowledged by the parties, that an interest in the disputed land was owned by unknown persons who were not parties to the litigation. Clearly, in cases involving the rights or claims of unknown persons and the rights of known persons who have not been served with process in the action, as in *Koonce*, the failure to comply with section 18-60-503(a) renders the trial court without subject-matter jurisdiction to adjudicate the parties' rights. *Koonce* has no application where, as in the case at bar, the dispute involves the location of a single boundary between two parcels of land, one of which is

undisputedly owned by the Robertses and one of which is undisputedly owned by Winningham. The Robertses and Winningham are the only individuals who could possibly claim an interest in the location of the disputed boundary, and all are parties to this action.

Affirmed.

HART and BAKER, JJ., agree.